[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 10, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-14945

_____

D. C. Docket No. 01-00061-CR-1-1-CAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN ALLEN ROOT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 10, 2002)**

Before ANDERSON, HULL and KENNEDY\*, Circuit Judges.

_____

\*Honorable Cornelia G. Kennedy, U.S. Circuit Judge for the Sixth Circuit,
sitting by designation.

HULL, Circuit Judge:

A federal jury convicted Appellant John Allen Root of one count of attempting to persuade a minor to engage in criminal sexual activity, in violation of 18 U.S.C. § 2422(b), and one count of traveling in interstate commerce for the purpose of engaging in a criminal sexual act with a minor, in violation of 18 U.S.C. § 2423(b). Root appeals his conviction and sentencing enhancement based on the fact that the "minor" involved was not an actual minor, but an undercover law enforcement officer. After review and oral argument, we affirm Root's conviction and sentence.

## I. BACKGROUND

A.    Root's Conversations with "Jenny"

Waylon Howell is an investigator with the Sheriff's Department of Gwinnett County, Georgia, and was assigned to the FBI's Innocent Images Task Force. Under the screen name "Jenny30043," Agent Howell logged on to an America Online ("AOL") chat room entitled "I Love Older Men."[1] Agent Howell had listed himself in his AOL profile as "Jenny," a single female student of an unspecified

_____

[1] As Agent Howell testified at trial, a chat room is "a place for people to meet on-line that have similar interests . . . where they can actually type and talk real time." He explained that when a user logs on to AOL, he or she can select from a list of chat rooms organized by category. When a user enters a chat room, all other people in that room are advised.

2

age living in Lawrenceville, Georgia, who was interested in music, chatting, movies and shopping.[2] Agent Howell did not send any private e-mails or distribute any messages immediately upon entering the chat room. But within five minutes he received instant messages[3] addressed to Jenny from multiple AOL users in the chat room. One of the messages came from Root, whose screen name was "JAR102353."[4] In his first private message to Jenny, Root said "good afternoon jenny. intriguing profile you have. big john here from nc. how are ya?"

Over the next three days, Jenny and Root then engaged in numerous private conversations. The agent portraying Jenny engaged in a steady repartee with Root designed to mimic a child's ignorance, insecurities and mannerisms, including misspellings and popular Internet slang.[5] On the fourth day, Root traveled from his

---

[2] Any other AOL user in the chat room can access the profile information submitted by another person in the chat room, Agent Howell testified.

[3] Instant messaging permits users to exchange private e-mails in quick succession. As Agent Howell testified, using instant messages is "like a private chat room . . . . It's a message that one person sends directly to another AOL screen name, and no one else can see it." These messages, he stated, can be sent back and forth so as to replicate a conversation.

[4] This screen name is a combination of Root's initials and date of birth.

[5] As Agent Howell testified, task force agents who receive unsolicited messages in such chat rooms seek in their responses to appear "naive" and "virginal . . . that we have no clue about any kind of sexual talk."

home in North Carolina to meet Jenny in Georgia, where he was arrested. We first review Root's conversations with Jenny during the three days prior to his arrest.

B.    December 19 Conversations

After Root introduced himself as "big john" on the afternoon of Tuesday, December 19, 2000, Root said he was a man who had "just turned 47" and lived in the Charlotte, North Carolina, area. Shortly thereafter, Root asked, "how old are you jenny," and the agent responded "im [sic] 13."

On that first afternoon, between 2:34 p.m. and 5:31 p.m., Root traded instant messages with Jenny from his office. At trial, the transcript of those messages showed Root did the following:

- Told Jenny that she was "at the age you need to learn some things" such as "how to have pleasure" and "experiment with your body on what makes it feel good."
- Said he wished he could feel her small breasts, wanted to kiss her "little nipples," offered to "kiss in between your legs," and asked if she would "let me finger you jenny if i was there now."
- Asked Jenny to "rub my cock" with "your little hands" and "lick it too." He said that touching a man's genitalia "gives you power" and that he knew "girls your age who have already done it. all the way." He added that he had "never been with one your age" but "would like to."
- Said "i want to do you so bad," and asked Jenny if she "want[ed] to f— me." He explained that sex might hurt "a little," but that he would be "gentle" and "patient" and "not put in more than you can take."
- Said that everything would be fine "long as we don't [sic] get caught."

4

During this conversation, which also involved Root describing masturbation, ejaculation, orgasms and his being "fixed," Root asked if Jenny could "get away for part of a day or nite" to meet him. Root, who also asked Jenny to send him a picture of herself, said he would drive to Georgia "if you will f— me." Jenny, who said she was unfamiliar with some of the sexual terms Root was using and did not have many friends because she was home schooled, suggested meeting Root that Friday at the Mall of Georgia when her mother dropped her off at the movies. Root said that would be "perfect," adding, "if you will get my cock off i will meet you anywhere."

C.      December 20 Conversations

The next afternoon, Root reinitiated the conversation at 1:20 p.m., and the ensuing three instant message sessions concluded at 5:28 p.m. During these sessions, Root did the following:

- Said he was "horny" and excited thinking about their planned meeting, during which he would "teach you." He added that Jenny should "think of spreading your legs so i can put my cock in you."
- Told Jenny he "cant [sic] wait to . . . feel your tiny little body in my arms" and "cant [sic] wait to feel your pussy around my cock jenny."
- Received Jenny's picture, which was an actual picture of a teenage girl sent by Agent Howell. Root said Jenny was "beautiful" and a "smart young pretty lady." He added, "i want you so bad . . . even more after i saw you."
- Told Jenny she would "love f—ing," that he would be "very gentle," and that "once you have my cock in you, it will feel so good. you will love to ride it and feeel [sic] it in you."

5

- Set a definite time and location for meeting Jenny – 3 p.m. on Friday, December 22, 2000, outside the Mall of Georgia's Old Navy store. Root told Jenny he would be "the tall guy with a bulge in his crotch."
- Told Jenny he would "have you" on Friday, that she would "learn lots," did not need to be nervous and did not need to worry about how much money to bring.

This conversation also included references by Root to Jenny rubbing his genitalia to "make big john feel good" and ejaculate, kissing him and learning "how to give blowjobs." He said he wanted to touch her "little nipples," make her "moan and scream," and "put a finger in you," and reassured her that sexual activity would not cause pain. "[I]f it starts to, i will go easier," Root stated.

D.     December 21 Conversations

On Thursday, December 21, 2000, Root and Jenny engaged in a final instant message session between 10:38 a.m. and 11:42 a.m. Root again initiated the conversation, during which he:

- Told Jenny, who said she could not sleep because she was thinking about their planned meeting, that he was "nervous too" because "i could get in a lot of trouble if we get caught . . . cause you are so young." He added, "if your parents found out they could lock me up for years . . . this is just between you and me."
- Said he wanted to kiss Jenny, lick her nipples and engage in oral sex with her. He added that he would "teach you" to perform oral sex.
- Confirmed for Jenny that other girls her age performed oral sex, saying, "some do it to their [boyfriend] every week or so . . . not just to please their [boyfriend], but because they like to do it themselves. turns em on."
- Explained to Jenny what she could do with him on Friday – go to the movies, to his car, "unzip my pants and play," and listen to CDs in his car "while we play."

6

- Said, "i want to rub your pussy . . . we will find a secluded spot."

Root concluded the conversation that morning by saying, "the plan is still on . . . in front of old navy at 3 . . . i will find you jenny."

E.    December 22 Travel to Meet Jenny

The next day – Friday, December 22, 2000 – Root traveled from North Carolina to the Mall of Georgia in Buford, Georgia.  When he arrived at the mall, FBI task force agents arrested him outside the Old Navy store.  After being informed of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and waiving them, Root told FBI Agent Allen Sosebee that he drove to the mall from North Carolina to meet Jenny, whom he had met in the AOL chat room entitled "I Love Older Men."  According to Agent Sosebee, Root stated that he "planned to take her to a movie, then take her to his car to listen to some CD's, and to engage in some sexual play."  When Agent Sosebee asked Root to define "sexual play," Root said, "well, rub each other's private parts."  Root further stated that he knew it was wrong to meet a 13-year-old girl for sex, but considered it "a notch on his belt" and "exciting."

## II.  PROCEDURAL HISTORY

On January 17, 2001, the grand jury indicted Root on one count of attempting to persuade a minor to engage in sexual activity for which he could be

charged with a criminal offense, in violation of 18 U.S.C. § 2422(b),[6] and one count of traveling in interstate commerce for the purpose of engaging in a sexual act with a minor that would violate 18 U.S.C. § 2243, in violation of 18 U.S.C. § 2423(b). Root pleaded not guilty.[7]

At trial, the government presented three witnesses – Agents Howell and Sosebee, and the office manager at Root's place of employment, who testified about Root's computer usage. When the government rested, Root moved for judgment of acquittal on both counts under Federal Rule of Criminal Procedure 29. Root argued, inter alia, that an actual child victim is required for commission of both charged offenses. Thus, he asserted, the government had failed to introduce evidence sufficient to sustain a conviction under either count of the indictment. The district court denied the motion. Root presented no evidence.

---

[6] Count One of Root's indictment alleged he:
did use a facility and means of interstate and foreign commerce, that is, a computer, to knowingly attempt to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which he could be charged with a criminal offense . . .
(emphasis added).

[7] Root remained free on a $20,000 personal appearance bond. A magistrate judge, however, revoked this bond on April 13, 2001, after Root admitted violating conditions of his release, including those related to his use of the Internet.

The jury then convicted Root on both counts. On August 17, 2001, the district court sentenced Root to concurrent terms of 40 months in prison on each count, three years of supervised release and $2,000 in fines. This sentence included enhancements under the Sentencing Guidelines of (1) two levels for unduly influencing a minor to engage in a sexual act, USSG § 2A3.2(b)(2)(B), and (2) another two levels for using a computer or Internet-access device in a sex crime with a minor, USSG § 2A3.2(b)(3). Root objected to the former, but not the latter, enhancement. Root timely appealed.

## III. CONVICTION

On appeal, Root contends that an actual minor was required for both his convictions and the sentencing enhancement under § 2A3.2(b)(2)(B) of the Sentencing Guidelines.[8] We discuss each challenge in turn.[9]

    A.    18 U.S.C. § 2422(b)

---

[8] There is no issue on appeal involving the application of § 2A3.2(b)(3) of the Sentencing Guidelines.

[9] Root asserts on appeal that both statutes under which he was indicted require an actual minor victim, and thus that the government failed to meet its burden of proof at trial. We review de novo issues of statutory interpretation and sufficiency of the evidence. United States v. Sabretech, Inc., 271 F.3d 1018, 1022 (11th Cir. 2001).

In Count One, the grand jury charged Root with attempting to violate 18 U.S.C. § 2422(b) between December 19 and 21, 2000. We conclude that an actual minor victim is not required for an attempt conviction under 18 U.S.C. § 2422(b).

Section 2422(b) plainly criminalizes the attempt conduct at issue here as follows:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense,[10] or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2422(b) (emphasis added). In 1998, Congress added the "or attempts to do so" language, which created the crime of attempt.[11] The fact that Root's crime had not ripened into a completed offense is no obstacle to an attempt

---

[10] The indictment in this case identified the relevant offenses as certain sexual conduct with children under the age of 16 forbidden under Georgia law. See O.C.G.A. §§ 16-6-3 (statutory rape), 16-6-4 (child molestation) (footnote added).

[11] While Root makes no constitutional challenge, we note that this addition of an attempt crime to § 2422(b) has been held constitutional. See United States v. Bailey, 228 F.3d 637, 638-39 (6th Cir. 2000) (concluding that crime of attempt under § 2422(b), with which "Congress has made a clear choice to criminalize . . . the attempt to persuade," was constitutional because "the Defendant simply does not have a First Amendment right to attempt to persuade minors to engage in illegal sex acts").

conviction.  Root's belief that a minor was involved is sufficient to sustain an attempt conviction under 18 U.S.C. § 2422(b).

This circuit has long held that to convict a defendant of the crime of attempt, the government need only prove "(1) the defendant was acting with the kind of culpability otherwise required for the commission of the crime for which he is charged with attempting; and (2) the defendant was engaged in conduct that constitutes a substantial step toward the commission of the crime."  United States v. Carothers, 121 F.3d 659, 661 (11th Cir. 1997) (per curiam) (citing United States v. Mandujano, 499 F.2d 370, 376 (5th Cir. 1974)).  This Court has clarified that for the second element to be satisfied, "the defendant's objective acts, without reliance on the accompanying mens rea, must mark the defendant's conduct as criminal."  Carothers, 121 F.3d at 662 (citing United States v. Oviedo, 525 F.2d 881, 885 (5th Cir. 1976)).  Thus, "the defendant's acts, taken as a whole, must strongly corroborate the required culpability; they must not be equivocal."  Id. (quoting United States v. McDowell, 705 F.2d 426, 428 (11th Cir. 1983)).[12]

---

[12]  The purpose of this second prong is to avoid "the conviction of persons engaged in innocent acts on the basis of a mens rea proved through speculative inferences, unreliable forms of testimony, and past criminal conduct."  Oviedo, 525 F.2d at 885; see also United States v. York, 578 F.2d 1036, 1038 (5th Cir. 1978) (noting that courts have often sought to distinguish between "preparation for a crime, which is not criminal, and an attempt, which has ripened into an offense").

Here, the government proved both elements necessary to convict Root.

First, it demonstrated, and Root does not challenge, that he had the specific intent to engage in the underlying criminal conduct. It introduced a transcript of Root's instant messages with a person who identified herself to Root as a 13-year-old girl in which he stated that (1) he wanted to be touched on his genitalia by her "little hands," feel her "little nipples" and hold her "tiny little body," (2) he had "never been with one your age," but that girls that age were engaging in various sexual activities, and (3) he knew he could "get in a lot of trouble" for engaging in the sexual activity he proposed to engage in because she was "so young." Root also accepted a picture of a teenage girl that Agent Howell sent him as Jenny's picture. And Root's statement to task force agents upon his arrest confirmed that he believed he would meet a 13-year-old girl for sex, which he said he knew was wrong but "exciting."[13]

Second, the government showed Root took substantial steps toward the commission of the underlying crime. He engaged in actual, objective acts that – independent of Root's mental state – strongly corroborate and provide unequivocal

---

[13] Root offered no evidence to suggest he did not think he was talking with an actual 13-year-old girl on the Internet. His counsel conceded at sentencing that "Mr. Root believed this to be a thirteen-year-old girl based on the confession he gave to the FBI agent that we heard."

12

evidence of Root's culpability. He repeatedly asked in his instant messages that Jenny kiss him, touch his genitalia, perform and receive oral sex, and engage in sexual intercourse with him. He drove five hours from North Carolina to Georgia to meet Jenny at the appointed time and place. And, when arrested by task force agents, Root stated that he was at the Old Navy store to engage in "sexual play" with a 13-year-old girl. These actions, taken as a whole, speak of only one plan of action. They "mark the defendant's conduct as criminal in nature" and are "unique rather than so commonplace that they are engaged in by persons not in violation of the law." Oviedo, 525 F.2d at 885. Root has not even attempted to offer a theory under which his acts were "consistent with a noncriminal enterprise" as the defendant did in Oviedo. Id. at 886.

On many occasions, this Court has affirmed attempt convictions even when a defendant did not actually commit the final act required for conviction for the underlying crime. See, for example, United States v. Baptista-Rodriguez, 17 F.3d 1354, 1369-70 (11th Cir. 1994) ("That the [cocaine] transaction was not consummated is immaterial to the inchoate offenses of conspiracy and attempt."); United States v. Forbrich, 758 F.2d 555, 556 (11th Cir. 1985) (holding that "although no delivery of the document occurred, Forbrich did take a substantial

13

step toward the commission of the crime" of delivering sensitive defense information to foreign government sufficient to sustain his attempt conviction).

And, of even more relevance here, this Court has affirmed attempt convictions when the defendant could not have achieved the final required act because it would have been impossible to commit the actual crime. See, for example, Carothers, 121 F.3d at 662 ("Simply because Defendant [convicted of attempt to possess ecstasy] received no illegal drugs from his supplier on this occasion [and received legal substances instead] does not provide a defense to a crime for which his objective acts clearly demonstrate an intent to commit."); McDowell, 705 F.2d at 428 (finding defendant's "objective acts sufficiently corroborative of guilt to sustain his conviction" for attempted possession of cocaine even though defendant had refused to accept "sham cocaine" offered to him by undercover agent). Compare Oviedo, 525 F.2d at 886 (finding evidence of attempted distribution of heroin insufficient when defendant's acts – negotiating to sell heroin but actually transferring a non-controlled substance to an undercover agent – did not "mark his conduct as criminal in nature" because he might have simply been seeking to "rip off" buyer).

B.    Fifth Circuit's Farner Decision

14

The only other appellate court to have considered this issue reached the same result – that an actual minor is not required for an attempt conviction under § 2422(b). See United States v. Farner, 251 F.3d 510 (5th Cir. 2001). In Farner, the Fifth Circuit affirmed the conviction of a Dallas man whose case was analogous to Root's. The man met someone who identified herself as "Cindy," a 14-year-old girl, via AOL. He asked her if she was looking for an older man, and she said she was. They spoke via instant messaging and telephone over a period of three months. The man sent her pornographic pictures and arranged to meet her at a Houston restaurant to engage in sexual activity. The girl was actually an adult female FBI agent. Id. at 511.

On appeal, the Fifth Circuit found that the evidence satisfied both of the requirements for an attempt conviction under Mandujano and Oviedo even though the "minor" involved was not an actual child, but an undercover law enforcement officer. Id. at 513 ("In this case, the district court correctly concluded from the stipulated evidence, beyond a reasonable doubt, that Farner intended to engage in sexual acts with a 14-year-old girl and that he took substantial steps toward committing the crime."). This conclusion is also in accord with reported district opinions interpreting 18 U.S.C. § 2422(b) as not requiring an actual minor for an attempt indictment or conviction. See United States v. Miller, 102 F. Supp.2d 946,

15

947-48 (N.D. Ill. 2000) (refusing to dismiss indictment, stating that § 2422(b) "makes unlawful attempts to induce those believed to be minors – even if they turn out to be of-age federal agents – into sexual activities . . . the defendant's belief that an element is met is sufficient to meet the element if attempt is charged"); United States v. Powell, 1 F. Supp.2d 1419, 1421 (N.D. Ala. 1998), aff'd 177 F.3d 982 (11th Cir. 1999) (stating that argument that defendant could not be indicted under § 2422(b) for attempting to lure two undercover agents posing as minor females on AOL to engage in sexual activity was "not supported by current federal law").[14]

> C.  Legislative History

---

[14]  The result we reach is the same regardless of any characterization of Root's defense as one of impossibility. As the former Fifth Circuit observed in Oviedo, parsing the intricacies of legal and factual impossibility when reviewing an attempt conviction is "not particularly helpful," adding:
> [Instead] we demand that in order for a defendant to be guilty of a criminal attempt, the objective acts performed, without any reliance on the accompanying mens rea, mark the defendant's conduct as criminal in nature. The acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law.

Oviedo, 525 F.2d at 883, 885. See also United States v. Innella, 690 F.2d 834, 835 (11th Cir. 1982) (finding that defense of "impossibility . . . is of no help" to defendant whose objective actions support an attempt conviction); Farner, 251 F.3d at 512 ("The distinction between factual and legal impossibility is elusive at best. Most federal courts have repudiated the distinction or have at least openly questioned its usefulness.") (citations omitted).

Root asserts that an unenacted legislative proposal to amend § 2422 helps prove § 2422(b) forbids convictions when actual underage victims are not involved, despite the plain language of the statute's attempt provision. He points to language introduced in the House of Representatives in 1998 that would have amended § 2422 to explicitly criminalize "knowingly contact[ing] an individual, who has been represented to the person making the contact as not having attained the age of 18 years." H.R. 3494, § 101, 105th Cong., 2d Sess. (1998). This proposal, however, was not enacted, leading Root to argue that Congress did not intend to cover such conduct in § 2422.

This argument does not lead us to alter our conclusion. First, we do not resort to legislative history when the statute's language of attempt is clear. See Harris v. Garner, 216 F.3d 970, 976 (11th Cir. 2000) (en banc) ("When the import of the words Congress has used is clear, as it is here, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language."); United States v. Weaver, 275 F.3d 1320, 1331 (11th Cir. 2001) (finding that court should not look beyond "plain meaning of the statutory language" except when confronted with "absurdity of results") (citations omitted).

Second, even if we succumb to the temptation to review the legislative history proffered by Root, it relates to a form of criminal activity involving minors – mere "contact . . . for the purposes of engaging" in illegal sexual activity – that is not criminalized in 18 U.S.C. § 2422(b). Instead, § 2422(b), as passed by Congress, condemns attempts to "persuade, induce, entice or coerce" them to engage in illegal sexual activity without any mention of "contact." Any inferences to be drawn from such an attenuated history are merely speculative. Even if the proposed language were more similar to the final version of § 2422(b), Congress may decline to enact proposed amendments for a multitude of reasons. See, for example, Weaver, 275 F.3d at 1332 (observing that passage of amendment to criminal statute might "only make[] clear that [the offense] could always have been charged with [the crime] under the pre-amendment [statute], and that the addition of [new language] . . . does not change this" and that this Court does "not give even clear legislative history more weight than clear statutory language") (quotations omitted); United States v. Sepulveda, 115 F.3d 882, 885 n.5 (11th Cir. 1997) (observing that plain language governs statutory interpretation because amendments may be made "to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases. Thus, an amendment to a statute does not necessarily indicate that the unamended statute meant the opposite.") (quoting

18

Hawkins v. United States, 30 F.3d 1077, 1082 (9th Cir.1994)).  In sum, this

legislative history does not aid Root's case.

    D.    18 U.S.C. § 2423(b)

For the same reasons, we also affirm Root's conviction under 18 U.S.C. §

2423(b).  Root makes very similar arguments concerning his conviction under 18

U.S.C. § 2423(b), which punishes travel with intent to engage in a sexual act with a

juvenile:

> A person who travels in interstate commerce, or conspires to do so . . . for
> the purpose of engaging in any sexual act (as defined in section 2246)[15] with
> a person under 18 years of age that would be in violation of chapter 109A[16]

---

[15]  A sexual act is defined in this cross-referenced provision as:
(A) contact between the penis and the vulva or the penis and the anus, and
for purposes of this subparagraph contact involving the penis occurs upon
penetration, however, slight;
(B) contact between the mouth and the penis, the mouth and the vulva, or the
mouth and the anus;
(C) the penetration, however slight, of the anal or genital opening of another
by a hand or finger or by any object, with an intent to abuse, humiliate,
harass, degrade, or arouse or gratify the sexual desire of any person; or
(D) the intentional touching, not through the clothing, of the genitalia of
another person who has not attained the age of 16 years with an intent to
abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of
any person
18 U.S.C. § 2246(2)(A)-(D) (footnote added).

[16]  In the indictment, the government identified the relevant provision that
Root intended to violate as 18 U.S.C. § 2243 (engaging in a sexual act with a
minor between the ages of 12 and 15 who was four years younger than the
offender) (footnote added).

> if the sexual act occurred in the special maritime and territorial jurisdiction of the United States shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2423(b). He asserts that this statute also requires the government to prove an actual "person under 18 years of age" was the object of the interstate travel as an element of the offense. And he cites similar unenacted language in H.R. 3494 that would have recognized criminal interstate travel related to sexual acts with a victim above the age of 18 "whom the person believes has not attained the age of 18 years." H.R. 3494, § 202. Thus, he argues again that it is not a federal crime to act as he did when an actual child is not involved.

We agree with the district court that Root may be convicted of violating 18 U.S.C. § 2423(b) based on the evidence presented at trial. Although Root was charged with and convicted of actual commission of this offense – and not merely attempt – Root's conviction turns simply on the illegal purpose for which Root traveled. See United States v. Vang, 128 F.3d 1065, 1069 (7th Cir. 1997) (noting that § 2423(b) "punishes mere 'travel' in interstate commerce – even if no transportation of a minor was involved" if the requisite intent is found).[17] Root

_____

[17] See also United States v. Smith, 749 F.2d 1568, 1569 (11th Cir. 1985) (finding that in prosecution for causing a person to travel in interstate commerce as part of scheme to defraud, 18 U.S.C. § 2314, "[t]here is no necessity that the scheme to defraud be successful, nor that the purported victim [portrayed by FBI agents] actually be deceived or defrauded").

does not dispute that he traveled in interstate commerce on the relevant day. And, from the government's evidence, there can be no doubt as to why Root drove from North Carolina to Georgia on that day. The government established, based on Root's instant messages and confession, that he traveled in interstate commerce for the purpose of engaging in criminal sexual activity with a person under age 18. Further, the proffered legislative history argument is just as irrelevant and, alternatively, as unpersuasive, in relation to this count of the conviction as it was in connection with 18 U.S.C. § 2422(b).

## V. SENTENCE

The application of § 2A3.2(b)(2)(B) of the Sentencing Guidelines to Root's conviction presents a sentencing issue of first impression in this, or any other, circuit. After review of the relevant authorities, we also find no error in the district court's imposition of a two-level enhancement under § 2A3.2(b)(2)(B) of the Sentencing Guidelines. We first review the content of this Guideline, and then evaluate the district court's application of its presumptions and standards to Root.[18]

   A.    Undue Influence Enhancement under the Sentencing Guidelines

---

[18] We review the district court's interpretation of the Sentencing Guidelines de novo, although we must accept its factual findings unless they are clearly erroneous. United States v. McClain, 252 F.3d 1279, 1284 (11th Cir. 2001).

Section 2A3.2(b) provides for a number of sentencing enhancements for defendants convicted of criminal sexual abuse of a minor under the age of 16 years or attempt to commit such acts. In subsection (b)(1), it provides for a two-level enhancement if the victim was in the custody, care, or supervisory control of the defendant. USSG § 2A3.2(b)(1). But, when that enhancement does not apply – as in this case – subsection (b)(2) provides for three other possible enhancements. One of these is a two-level enhancement if "a participant otherwise unduly influenced the victim to engage in prohibited sexual conduct." USSG § 2A3.2(b)(2)(B).[19] The district court imposed this enhancement in calculating Root's sentence.

In crafting this Guideline, the Sentencing Commission specifically defined the term "victim" for the "purposes of this guideline" as including an undercover law enforcement officer, as follows:

> "Victim" means (A) an individual who, except as provided in subdivision (B), had not attained the age of 16 years; or (B) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years.

---

[19] The two other enhancements under this subsection may apply if the offense involved a knowing misrepresentation of a participant's identity or use of an Internet-access device. USSG § 2A3.2(b)(2). As noted previously, the district court applied the latter enhancement in calculating Root's sentence, but he did not object to and does not appeal that decision.

USSG § 2A3.2, note 1. The Sentencing Commission explained that the purpose of

this expanded definition of "victim" was to ensure offenders who are apprehended

in undercover operations, like Root, are appropriately punished, as follows:

> This amendment . . . [is] clarifying that 'victim' includes an undercover
> police officer who represents to the perpetrator of the offense that the officer
> was under the age of 16 years. This change was made to ensure that
> offenders who are apprehended in an undercover operation are appropriately
> punished.

Amend. 592, cmt. (2000).[20]

The Sentencing Commission also instructed district courts applying the

"undue influence" enhancement to "closely consider the facts of the case to

determine whether a participant's influence over the victim compromised the

voluntariness of the victim's behavior." USSG § 2A3.2, note 5. It created a

rebuttable presumption that a victim has been unduly influenced for the purposes

of § 2A3.2(b)(2)(B) when "a participant is at least 10 years older than the victim."

Id. The Sentencing Commission added that, when such an age difference exists,

"some degree of undue influence can be presumed because of the substantial

difference in age between the participant and victim." Id.

In its commentary, the Sentencing Commission noted its research showed

that cases of both consensual and nonconsensual sexual acts with minors involved

---

[20] The effective date of this amendment was November 1, 2000.

"conduct such as coercion, enticement, or other forms of undue influence by the defendant that compromised the voluntariness of the victim's behavior." Amend. 592, cmt. These actions "increased the defendant's culpability for the crime." Id. The Commission added that its research showed the rebuttable presumption was appropriate because "persons who are much older than a minor are frequently in a position to manipulate the minor due to increased knowledge, influence, and resources." Id.

B.     Root's Sentence

In this case, the district court reviewed these authorities before granting the government's motion for a two-level enhancement of Root's base offense level under § 2A3.2(b)(2)(B).[21] The court first recognized that the definition of "victim" included an undercover law enforcement officer portraying a child online. Second, the court interpreted the phrase "unduly influenced the victim" to focus on "the actions of the defendant, regardless of whether the victim was a real person or a hypothetical person."

---

[21] Root was eligible for this enhancement because it is applicable to convictions under 18 U.S.C. § 2423(b), and Root's convictions were grouped for sentencing calculation purposes pursuant to § 3D1.2(d) of the Sentencing Guidelines.

The court also applied the presumption of undue influence because Root, at age 47, was more than 10 years older than "Jenny," who identified herself as being 13 years old. In addition, the district court found that Root failed to rebut this presumption. The court further found that "[i]n fact, the evidence shows a rather graphic over reaching conduct."[22]

C.    Minor Victim under the Guideline

On appeal, Root reasserts his objection at sentencing that this "undue influence" enhancement is not applicable because there was no real victim whose will was overborne. The government concedes that Agent Howell's will certainly was not compromised. But, as the government points out, the Guideline states that an actual child victim need not be on the receiving end of the relevant persuasion. Indeed, the commentary to § 2A3.2 explicitly instructs that for all enhancements under this Guideline, an undercover officer playing the role of a minor victim

---

[22] After noting that Root had not rebutted the presumption of undue influence based on the age difference between him and Jenny, the district court then rejected any argument that a hypothetical minor would not have been influenced by Root:

> In fact, the evidence shows a rather graphic over reaching conduct, the Court's only concern is whether it be so vulgar as to whether it would entice – so vulgar, the question is whether a child under the age of sixteen would be repulsed by his conduct. But I will overrule the defendant's objection . . . and thereby give the plus two points in the presentence.

qualifies as a victim, thereby making an actual victim unnecessary. USSG § 2A3.2, note 1.[23] Moreover, the Sentencing Commission noted that it added this definition for the very purpose of ensuring that offenders who are apprehended in undercover operations are appropriately punished.

The Guideline then creates an enhancement when an offender "unduly influenced the victim to engage" in illegal sex acts. USSG § 2A3.2(b)(2)(B). This provision applies both when actual sexual abuse is committed, as well as when an attempt to commit such an act is involved. USSG § 2A3.2. Thus, a victim need not actually engage in any sex acts for an offender to receive an enhancement. Instead, he may, like Root, be apprehended prior to the commission of the complete offense and charged with an attempt to commit a sex crime, in violation of 18 U.S.C. § 2422(b), or charged with an offense requiring a non-sexual action such as traveling taken with a specific intent to commit a sex crime, in violation of 18 U.S.C. § 2423(b). In such a case, the identity of the victim of an attempt conviction is irrelevant for purposes of a sentence enhancement under §

---

[23] We must read the Sentencing Guidelines in conjunction with their commentary. United States v. Ferreira, 275 F.3d 1020, 1029 (11th Cir. 2001).

2A3.2(b)(2)(B). The offender need only have exerted undue influence aimed at convincing the victim "to engage" in future improper sexual activities.[24]

Thus, when an undercover officer is the recipient of communications related to the commission of a sex crime offense and no actual child is involved, a district court considering an undue influence enhancement, under § 2A3.2(b)(2)(B), must focus on the offender's conduct. The officer's identity or feelings about the offender's conduct are irrelevant. Certainly, the voluntariness of a real child victim's actions would be dispositive if an undercover agent were not involved. But if an undercover agent is allowed to be the sole victim of a crime for which an enhancement under § 2A3.2 may be given, it would be illogical to interpret § 2A3.2(b)(2)(B) to require that agent's will actually be overborne. Such an interpretation would also undermine the Sentencing Commission's stated purpose in amending the definition of victim under § 2A3.2 of ensuring that "offenders who are apprehended in an undercover operation are appropriately punished." A real victim is not needed under § 2A3.2(b)(2)(B) when an undercover agent is

---

[24] Of course, if the victim acceded to the offender's influence and actual sex acts occurred, that success could be additional evidence of the use of undue influence. But it is not required.

27

involved, as the focus is on the offender's conduct.[25]  In assessing whether an

offender's conduct constitutes "undue influence," the district court may look to a

variety of factors, including whether it displays an abuse of superior knowledge,

influence and resources.

---

[25]  Using undercover agents as decoys is especially logical as child sex offenders today may choose to employ a growing number of impersonal, electronic means of communications to prey upon their victims, including cellular telephones, Internet chat rooms and fax machines.

D.    Application of the Rebuttable Presumption

We further conclude that a sentencing court may also employ the rebuttable presumption of undue influence created by the Sentencing Commission when there is a 10-year difference between the offender's age and the age of the child portrayed by an undercover agent.

The Sentencing Commission specifically provides for this rebuttable presumption when "a participant is at least 10 years older than the victim." USSG § 2A3.2, note 5 (emphasis added). A "victim" can be "an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years." Id. at note 1. Thus, the presumption applies here. Indeed, there is no specific exclusion for operation of the presumption when the victim is an undercover agent.

Given that the presumption applies here, the only real question is: to whose age do we look when employing the presumption. Because looking to the age of the actual undercover agent would be illogical and, in essence, write the rebuttable presumption out of this Guideline, we decline to read this Guideline in that way. Instead, we conclude that the only logical reading to give effect to this presumption is to look to the age of the child as portrayed by the agent. This reading is also consistent with the overall focus of this Guideline – on the offender, and not the

29

victim. It is also consistent with the reason why the definition of "victim" was amended to include undercover agents – "to ensure that offenders who are apprehended in an undercover operation are appropriately punished." Amend. 592, cmt.

Here, regardless of whether Jenny was a real 13-year-old or a "hypothetical" 13-year-old portrayed by an undercover officer, the presumption applied because Root had been convicted of offenses involving sexual activity with a person defined as a "victim" under the Guideline who he believed to be, and had represented herself to be, 13 years old. Thus, the district court here correctly applied the Guideline's presumption of undue influence given the 34-year age difference between Root and Jenny.

E.    Sufficiency of Evidence Concerning Undue Influence

The district court also did not err in finding Root did not rebut the presumption of undue influence. As he did at sentencing, Root appears to maintain that even if an actual victim is not necessary, his conduct would have repulsed an actual 13-year-old girl and not persuaded her to engage in sexual activity.

Therefore, Root argues that regardless of whether the rebuttable presumption applies, his conduct did not qualify as undue influence under § 2A3.2(b)(2)(B).[26]

Root's own words, however, provided more than sufficient evidence to support the district court's finding of undue influence. We look to facts related to the three types of power the Sentencing Commission stated sex offenders frequently use to manipulate minors. First, Root displayed increased knowledge to influence Jenny. When Jenny told Root in her instant messages that she was not sexually experienced and was not familiar with some of the terms Root was using in his messages, he described a variety of sexual activities in detail to her – including masturbation, ejaculation, orgasms, cunnilingus, fellatio, manual penetration and sexual intercourse. Root also said he had participated in these activities before, they would "feel good," and they would not cause pain or pregnancy (because he was "fixed").

Second, Root used persuasive powers to influence Jenny. He said girls Jenny's age – 13 – engaged in the sexual acts he had described and invited her to perform, which he described as "playing." He told her she was at an age when she needed to "learn some things," but that he would "love to teach you some of these

---

[26] Based on our interpretation that when an undercover officer portrays a child the focus is on the reasonable impact of the offender's conduct, the fact that Agent Howell was not himself overborne by Root's instant messages is irrelevant.

31

things" and "experiment with you." He also promised he would be "gentle" and "patient." And Root explained to her that although he could "get in a lot of trouble" for meeting Jenny and engaging in sexual acts, everything would be OK because he "trust[ed]" her not to tell anyone about it. Moreover, Root's conversations with Jenny are peppered with reassuring comments about Jenny's appearance, personality and his interest in her. He also made statements to bolster Jenny's self-confidence, commenting on her sexual vitality and responding to her statements of nervousness. All of these messages were phrased by Root to win over the insecure teenager portrayed by Agent Howell. Ultimately, he said he would truly like Jenny – "especially if you f— me."

Third, Root used superior resources to influence Jenny. He used his office computer to conduct his instant message sessions with her and send his picture to her. He planned to, and did, drive his late-model Dodge sedan across three states to meet Jenny after taking a day off from work. He told her that after her mother dropped her off at the Mall of Georgia on December 22, they could see a movie together, stating that Jenny did not need to worry about how much money to bring. And he said she could come inside his car to engage in sex acts while listening to music on his car CD player.

Given that the primary focus is on Root's own conduct, his argument that a 13-year-old girl would have been repulsed by Root's statements instead of being lured in is unpersuasive. In any event, we cannot find fault with the district court's conclusion on the record before us that Root's conduct was not so off-putting as to be repulsive to a 13-year-old, and thus not undue influence. The district court reviewed the transcripts of the conversations between Root and Jenny, heard testimony from the task force agents who portrayed Jenny and interviewed Root, and considered whether a child of this age could be enticed by Root's words. It is entirely plausible and reasonable to believe that due to Root's steady stream of reassuring, knowledgeable and skillful manipulation, an unwilling child of 13 would be convinced to follow along the primrose path he set out for Jenny. Contrary to Root's contention, this conclusion is not undermined by Jenny's occasional instant messages to Root stating that she was not uncomfortable during their conversation. We see no abuse of discretion in the district court's rejection of this argument.[27]

---

[27] At oral argument, Root's counsel contended that Root could never rebut a presumption of undue influence when, as here, no child victim could testify about the voluntariness of her actions. But a defendant in Root's position can – just as he does on appeal – point to the reasonableness of the interpretation of the facts adduced at trial (such as the instant messages here) to argue against this enhancement. And, we note, the government is similarly disadvantaged by the lack of a real victim, and is left to argue based on the same cold facts. In any event,

In conclusion, we affirm Root's conviction and sentence.

**AFFIRMED.**

---

even if the presumption were inapplicable, the evidence of Root's conduct here was sufficient alone.

KENNEDY, Circuit Judge, concurring in part and dissenting in part:

I concur in the court's opinion except for the sentencing enhancement of USSG § 2A3.2(b)(2)(B) which provides: "A participant otherwise unduly influenced the victim to engage in prohibited sexual conduct." By its terms, it appears to be intended to increase the penalty where criminal sexual activity has taken place, been engaged in, or at least the victim has been influenced to meet for that purpose so one can measure whether the victim has been unduly influenced. According to the commentary, "[i]n determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the victim compromises the voluntariness of the victim's behavior." Where, as here, no criminal sexual activity has occurred and the victim was not in fact influenced by defendant, the court, applying the presumption because of the vast difference in age, has had to substitute for the factual finding called for in the commentary whether it thinks defendant's conduct would have unduly influenced a thirteen-year old hypothetical victim. The other enhancements in this section all lend themselves to attempts and can be measured by defendant's conduct. This is the only enhancement that requires examination of the effect on the victim.

I would find the enhancement inapplicable here.