[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 28, 2007
THOMAS K. KAHN
CLERK

No. 07-11744
Non-Argument Calendar

_____

D. C. Docket No. 06-00085-CR-4-RH-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OZGUR YILMAZEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(November 28, 2007)**

Before TJOFLAT, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Ozgur Yilmazel appeals his 60-month sentence for traveling in interstate commerce for the purpose of engaging in a sexual act with a minor, a violation of 18 U.S.C. § 2423(b). After chatting online with an undercover officer who was

posing as a 14-year-old girl, Yilmazel was arrested when he arrived at the site of a prearranged meeting with the victim. For the first time on appeal, Yilmazel argues that the district court erred by increasing his offense level by two levels, pursuant to U.S.S.G. § 2G1.3(b)(2)(B), for unduly influencing a minor. More specifically, Yilmazel asserts that § 2G1.3(b)(2)(B) does not apply to a case in which the minor is fictitious, and that even if it is applicable, the district court did not make sufficient factual findings to apply it to his case. He also challenges the reasonableness of his sentence. After careful review, we affirm.

The relevant facts are straightforward. On December 5, 2006, Yilmazel was indicted on one count of traveling in interstate commerce for the purpose of engaging in a sexual act with a person under 16 years of age, a violation of 18 U.S.C. § 2423(b). He pled guilty and proceeded to sentencing.

According to the undisputed facts of the presentence investigation report ("PSI"), Yilmazel, a 31-year-old resident of Turkey who was in the United States on a B-2 visa at the time of his arrest, began chatting online with an individual identified as "cindygirl718," who claimed to be a 14-year-old girl in Tallahassee, Florida, but, in fact, was an undercover Florida Department of Law Enforcement agent. The day after their first chat, Yilmazel sent "cindygirl718" a nude picture of himself, in which his penis was erect and his face was visible. In subsequent

2

online chats, he offered to take naked pictures of "cindygirl718." During one exchange, Yilmazel asked "cindygirl718" what she thought about sex. After she responded that she was "kinda new at this" and asked whether it would hurt, Yilmazel said: "If your partner is patient enough it won't be so hard . . . [bec]ause if he really turn [sic] you on, the muscles on [sic] your vagina won't be tight anymore . . . [a]nd you'll be wet."

In a later chat, Yilmazel stated that he wanted to "make love" to "cindygirl718," and that she would not get pregnant because he would use condoms, and she could quit at any time if it hurt. Yilmazel again discussed taking naked pictures of her, but then stated "not naked I think . . . it is against the law I think . . . cause u r young." He then instructed "cindygirl718" not to wear any underwear when they met and wrote that, if she got hungry, she could "eat" him. Yilmazel then arranged a meeting with "cindygirl718" at a McDonald's in Tallahassee, indicating that he would bring a camera to take pictures of her. Upon arriving at the restaurant at the planned meeting time, Yilmazel was arrested.

The PSI assigned Yilmazel a base offense level of 24, pursuant to U.S.S.G. § 2G1.3, and recommended a 2-level increase, pursuant to § 2G1.3(b)(2)(B), for unduly influencing a minor to engage in prohibited sexual conduct, and a 2-level increase, pursuant to § 2G1.3(b)(3), for using a computer to "entice, encourage,

offer, or solicit a person to engage in prohibited sexual conduct with a minor." After applying § 2G2.1, pursuant to the cross-reference of § 2G1.3(c)(1), because the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, Yilmazel's adjusted offense level was 33. With a criminal history category I, according to the PSI, Yilmazel's Guidelines range was 135 to 168 months' imprisonment.

Prior to the sentencing hearing, Yilmazel filed a sentencing memorandum, in which he argued that: (1) while a departure for aberrant behavior was not available to him, the court should consider, under § 3553(a), that many people who knew him were surprised by his conduct and considered it an aberration; (2) the requirements of the cross-reference of § 2G1.3(c)(1) were not met because he only sent nude pictures of himself and possessed a camera at the time of his arrest; (3) the correct guideline range should be 46 to 57 months, based on a 2-level increase, pursuant to § 2G1.3(b)(3), for using a computer, and a 3-level reduction, pursuant to § 3E1.1, for acceptance of responsibility; and (4) a sentence of a year and a day, followed by deportation, would be a sufficient sentence in light of the factors enumerated in § 3553(a).

At the sentencing hearing, Yilmazel objected to application of § 2G1.3(b)(2)(B) for unduly influencing a minor to engage in prohibited sexual conduct, arguing that, while the Guidelines commentary states that there is a rebuttable presumption of undue influence if the defendant was more than ten years older than the minor, the facts of the instant case involved only a "flurry of emails going back and forth" with no undue influence, other than the agent's willingness "to say and do whatever he needed to."

The district court rejected Yilmazel's argument concerning the § 2G1.3(b)(2)(B) enhancement for undue influence, finding that while there was not actual undue influence, Yilmazel's conduct would have constituted undue influence if there had been a real victim instead of an agent posing as a minor. After finding that the cross-reference of § 2G1.3(c)(1) was inapplicable, because the government did not establish that Yilmazel intended to take sexually explicit pictures of the "minor," the district court stated that the adjusted offense level was 25 and yielded an advisory sentencing range of 57 to 71 months' imprisonment.

Before imposing sentence, the district court stated that it had read the letters of support submitted by Yilmazel, but had not read the various certificates and degrees awarded to Yilmazel because they were in Turkish. The court then heard Yilmazel's explanation of the certificates and degrees. Yilmazel also told the court

5

that he had contacted a woman at the Turkish Embassy, who stated that Turkey almost never agrees to transfer prisoners back to Turkey to complete their sentences. Yilmazel requested that he be sentenced to time-served and be sent back to Turkey to be with his family. The government responded that Congress continues to increase the scope and severity of punishment for these types of crimes and argued that Yilmazel should be sentenced like any other defendant in the United States having the same personal and familial difficulties. Finally, Yilmazel added that, unlike other defendants in the United States, he will not have family support while incarcerated, as his family will be financially unable to travel from Turkey to visit him.

After hearing the parties' arguments concerning an appropriate sentence, the district court imposed a sentence of 60 months' imprisonment, which was at the lower end of the 57-to-71-month range Yilmazel faced. The district court indicated that it had considered the Guidelines, and all of the factors set forth in § 3553(a), including Yilmazel's good record, and the seriousness of the offense, which, it stated, was accounted for in the Guidelines range. The district court noted that while it was sympathetic to the hardship of not being able to have family visits, the sentence should not be significantly different based simply on the facts

6

that Yilmazel is not from the United States and will be deported. This appeal followed.

This Court reviews a district court's interpretation of the Guidelines de novo, and its factual findings for clear error. United States v. Jordi, 418 F.3d 1212, 1214 (11th Cir.), cert. denied, 546 U.S. 1067 (2005). However, Yilmazel's challenge to the § 2G1.3(b)(2)(B) enhancement, based on the fictitious nature of the "victim," is raised for the first time on appeal, and thus, our review is for plain error only. See United States v. Olano, 507 U.S. 725, 732-36 (1993) (internal quotations and citations omitted). To prevail under the plain error standard, an appellant bears the burden of demonstrating that: (1) the district court erred; (2) its error was plain; and (3) the error implicated his substantial rights. We may then correct the error, at our discretion, if the error has "seriously affected the fairness, integrity or public reputation of judicial proceedings." Id.

Section 2G1.3(b)(2)(B) provides for a two-level increase if "a participant [of the crime] otherwise unduly influenced a minor to engage in prohibited sexual conduct." U.S.S.G. § 2G1.3(b)(2)(B). In intervening caselaw, we recently held that § 2G1.3(b)(2)(B) can apply where the minor is fictitious, as "the focus is on the defendant's intent, not whether the victim is real or fictitious." See United States v. Vance, 494 F.3d 985, 995-97 (11th Cir. 2007). Application note 3(B) to §

7

2G1.3 further provides that, where a participant is at least ten years older than the minor, there is a rebuttable presumption of undue influence. U.S.S.G. § 2G1.3(b)(2), note 3(B); see also United States v. Root, 296 F.3d 1222, 1234-35 (11th Cir. 2002) (holding that the district court may employ, pursuant to U.S.S.G. § 2A3.2, note 5, a rebuttable presumption of undue influence when there is a ten-year age difference).

Yilmazel's argument based on the fictitious nature of the victim is foreclosed by Vance. He cannot establish error, plain or otherwise, on that basis. Moreover, Yilmazel presented no evidence to rebut the presumption of undue influence arising from the ten-year age difference between himself and the "minor." The presumption was amply supported by the evidence, which included detailed descriptions in the exchanges between Yilmazel and the "minor," in which Yilmazel said, among other things, that sex would not "be so hard" because, if the minor's "partner was patient enough" her "vagina won't be tight . . . and she'll be wet." Cf. Root, 296 F.3d at 1236 (affirming district court's finding that defendant failed to rebut presumption of undue influence, where defendant displayed increased knowledge to influence the "minor" by describing sexual activities in detail and stating that sex would "feel good" and not cause her pain; used persuasive powers, in part by stating that he would be "gentle" and "patient"; and

8

used superior resources to influence the "minor" by using his office computer to send instant messages and send pictures of himself to her, driving his car across states to meet her, and telling her that she would not need to worry about bringing money to their meeting). Put simply, the district court did not err in applying the enhancement.

We likewise are unpersuaded by Yilmazel's argument that his sentence was unreasonable. He says that the district court erred by not giving any "meaningful consideration" to the fact that he would be serving his sentence in a foreign prison, where his family would not be able to visit, and he would be deported after his sentence, thereby depriving him of future work opportunities. He also claims the district court overemphasized the mandatory minimums addressed in other internet sex-crime cases involving different statutes. He says that he should have received a below-Guidelines sentence. We disagree.

After United States v. Booker, 543 U.S. 220 (2005), a district court, in determining a reasonable sentence, must correctly calculate the sentencing range under the Guidelines and then consider the factors set forth in 18 U.S.C. § 3553(a). See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). "[N]othing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the §

3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). Instead, indications in the record that the district court considered facts and circumstances falling within § 3553(a)'s factors will suffice. Id. at 1329-30; Talley, 431 F.3d at 786. "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006), cert. denied, 127 S. Ct. 3040 (2007).

Because our review is not de novo, we will not substitute our judgment in weighing the factors, absent a "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. We review a defendant's ultimate sentence for reasonableness in light of the § 3553(a) factors. See United States v. Winingear, 422 F.3d 1241, 1246 (11th Cir. 2005). "[T]he party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." Talley, 431 F.3d at 788.

Here, the district court was not required to explain precisely how it weighed each § 3553(a) factor, and we find it plain that the court considered the § 3553(a) factors in imposing a sentence at the lower end of the Guidelines range. Put

simply, Yilmazel has not demonstrated that his sentence, at the low end of the correctly calculated Guidelines range, was unreasonable. Accordingly, we affirm.

**AFFIRMED.**