[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 4, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-10185

_____

D. C. Docket No. 03-00325-CR-H-S

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID LEBOVITZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(March 4, 2005)**

Before ANDERSON, CARNES and RONEY, Circuit Judges.

CARNES, Circuit Judge:

David Lebovitz wanted to have sex with a girl who was ten to twelve years old. Seeking to fulfill that desire, he responded to an Internet bulletin board posting and eventually agreed to pay the father of a girl that age to let him have sex with her. As sometimes happens in this part of the illicit sex world, "Dad" was an undercover officer in the Birmingham Police Department who was working to arrest child molesters. After Lebovitz traveled from Chicago to Birmingham with three condoms in his pocket he was arrested. Law enforcement officers then searched Lebovitz's home in Chicago and found thousands of pornographic books, pictures, computer files, and videos, all depicting children.

Bowing to the inevitable, Lebovitz pleaded guilty to traveling in interstate commerce with the intent to have sex with a minor, in violation of 18 U.S.C. § 2423(b), and to possessing child pornography obtained through interstate commerce, in violation of 18 U.S.C. § 2252A. The district court sentenced him to 118 months in prison, which Lebovitz contests on grounds that the sentencing guidelines were applied improperly. We disagree, and affirm his sentence.[1]

---

[1] Neither party has raised at any time any issue concerning United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005). Accordingly, we say nothing else about that decision. See United States v. Barragan, No. 03-1480, 2005 WL 352629, at *1 n.2 (10th Cir. Feb. 15, 2005) ("Because Mr. Barragan does not assert the District Court erred under United States v. Booker[], we need not consider its application to his appeal."); United States v. Johnson, No. 04-1607, 2005 WL 221978, at *1 (7th Cir. Feb. 1, 2005) (same); United States v. Cole, 395 F.3d 929, 932

## I.

The facts of this case are undisputed. On January 13, 2003, Lebovitz, a substitute elementary school teacher in suburban Chicago, responded to an Internet bulletin board message entitled, "teengirls4men." The message asked for "Serious Inquiries Only." Lebovitz, being serious, said that he was "very interested in what you may have to offer."

Unknown to Lebovitz, his e-mail response went to Lt. John Crane of the Police Department in Birmingham, Alabama. Crane is an expert in investigations of child sexual exploitation and child pornography, and he posted the message on the bulletin board as part of a sting operation to catch pedophiles preying on children.

Crane, using an alias, e-mailed back to Lebovitz that he was a European businessman with friends in the United States who "share my desires." He asked for Lebovitz's "specific interests," and suggested that he send all future correspondence by postal mail. Crane ended his e-mail with the assurance that he would "try and put [Lebovitz] in contact with a group close to you."

Excited about the opportunity, Lebovitz responded by letter, asking for more details and stating that he was interested in having sex with girls in "the 10-

n.4 (8th Cir. 2005).

3

12 range." Crane replied, this time posing as a retired Alabama factory worker with three stepchildren, all girls. He claimed to have gotten Lebovitz's name from a friend in Europe. He also said that his three stepdaughters were nine, eleven, and thirteen, and that together the family enjoyed "fun situations" and "good time[s]."

Lebovitz wrote again, this time asking for more details and for a picture of Crane's three stepdaughters. Crane's letter back suggested to Lebovitz that he should have sex with Crane's thirteen-year-old stepdaughter because she was "the oldest and most experienced." Crane enclosed her photograph (which was actually a photograph of a female police officer when she was thirteen).

Lebovitz would not be swayed. He had very specific tastes, as he explained in his next letter to Crane:

> I just received your letter along with the picture of [your thirteen-year-old stepdaughter]. First of all let me make it clear what I am looking for. . . . To put it bluntly, I would like to make love to one of your girls. I have always wanted to make love to a young girl, but was looking for the right opportunity to safely make the approach (I don't want to get in trouble any more than you do). Although [your thirteen-year-old stepdaughter] is very pretty, I think I would prefer [your eleven-year-old stepdaughter], she's more in the age bracket I'm looking for. I'm not into pain or domination. I just want to cuddle, kiss and caress her and to try and make it as enjoyable a situation to her as it would be to me. I would like to orally stimulate her and would appreciate her returning the favor, but only if she is willing. And yes, I do want to have intercourse with her.

4

He ended by asking for a photograph of the eleven-year-old girl.

Crane said that Lebovitz's choice was fine with him, but his eleven-year-old daughter "would expect a tip" of seventy-five dollars an hour for a minimum of two hours. Lebovitz readily agreed, saying that he believed the price to be "very reasonable." The two then worked out the logistics: Lebovitz would fly from Chicago to Birmingham and meet the family at a hotel in that city on May 29, 2003.

Lebovitz spent the morning of the 29th at the Birmingham Zoo. He then went to the hotel to meet Crane, where he was arrested after he handed Crane the "tip." At the time of his arrest, Lebovitz was carrying a pair of earrings for Crane's fictitious stepdaughter and three condoms. The next day, he was charged with traveling in interstate commerce with the intent to engage in a sexual act with a minor. 18 U.S.C. §§ 2423(b), (e).

As part of the investigation, law enforcement officers searched Lebovitz's home in Chicago and found his child pornography collection. It included hundreds of illicit images stored on his computer hard drive, some of which depicted the sadomasochistic abuse of children; a photo album with 300 pictures of naked girls, some as young as four; two coffee table books with pictures of nude children; and fifty floppy disks storing files of child pornography.

On August 21, 2003, Lebovitz pleaded guilty to violating 18 U.S.C. § 2423(b) and (e). He also, for the purposes of sentencing, admitted to "knowingly and intentionally possess[ing] approximately 420 images of child pornography as that term is defined in 18 USC 2256(8)(A) (in violation of 18 USC 2252A(a)(5)(B))."[2] The probation office's pre-sentence investigation report recommended applying the base offense level for United States Sentencing Guidelines (U.S.S.G.) § 2A3.1(a) (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse) and § 2G2.4(a) (Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct). It also recommended that Lebovitz's sentence be enhanced because of the young age of his victim, § 2A3.1(b)(2)(A); the young age of those depicted in the pornographic pictures found in his house, § 2G2.4(b)(1); his use of a computer in obtaining the pornographic pictures, § 2G2.4(b)(3); and the sheer volume of his personal collection of child pornography, §§ 2G2.4(b)(2) & (b)(5)(C).

The district court held the sentencing hearing on December 29, 2003. Lebovitz raised four objections to the PSI, which the court overruled. Accepting

---

[2] United States Sentencing Guideline section 1B1.2(c) provides that "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)."

the PSI's recommendation, the district court sentenced Lebovitz to 118 months in prison and 120 months of supervised release.

## II.

Lebovitz appeals his 118-month prison term. He raises the same issues here that he raised in his four objections before the district court: (1) § 2A3.1 was not the most appropriate guideline for Lebovitz's criminal conduct; (2) the § 2A3.1(b)(2)(A) enhancement for the age of the "victim" was improperly applied; (3) enhancements for possession of child pornography, § 2G2.4(b)(2), and for use of a computer to obtain child pornography, § 2G2.4(b)(3), impermissibly double counted the same harm; and (4) the two enhancements for the possession of child pornography, §§ 2G2.4(b)(2) & (b)(5)(C), impermissibly double counted the same images.

## A.

We review <u>de novo</u> the district court's interpretation and application of sentencing guideline provisions. <u>United States v. Amedeo</u>, 370 F.3d 1305, 1312 (11th Cir. 2004).

1.

Lebovitz first contends that the district court applied the wrong sentencing guideline for his violation of 18 U.S.C. § 2423(b), traveling in interstate commerce with the intent to have sex with a minor.

There are three guidelines applicable to violations of 18 U.S.C. § 2423(b): U.S.S.G. § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse); § 2A3.2 (Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts); and § 2A3.3 (Criminal Sexual Abuse of a Ward or Attempt to Commit Such Acts).  U.S.S.G. app. A. Where more than one guideline is applicable, sentencing courts are to "use the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted."  Id. app. A introduction.

The district court ruled that § 2A3.1 is the "most appropriate" guideline for Lebovitz's "offense conduct."  Lebovitz, however, contends that § 2A3.2 is the "most appropriate" guideline.  His preferred guideline states:  "If the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined by 18 U.S.C. § 2241 or § 2242), apply § 2A3.1 . . . ."  U.S.S.G. § 2A3.2(c).  A defendant commits criminal sexual abuse when he "crosses a State line with intent to engage in a sexual act with a person who has not attained the

8

age of 12 years . . . or attempts to do so." 18 U.S.C. § 2241(c). In other words, the guideline provision that Lebovitz argues should apply itself directs us to apply the guideline he wants to avoid.

The only reason Lebovitz gives for avoiding the clear effect of the cross-reference to U.S.S.G. § 2A3.1 is that his victim was fictitious. However, that is of no real consequence in determining the "most appropriate" base offense guideline. As the Fifth Circuit explained in United States v. Rhodes, "the fact that [Rhodes] was unable to complete the crime because the victims were fictitious is not the determining factor. Rather, [Rhodes'] intent and conduct constitute criminal sexual abuse . . . ." 253 F.3d 800, 805 (5th Cir. 2001) (quotation marks omitted); accord United States v. Butler, 92 F.3d 960, 963 (9th Cir. 1996) (same); see also United States v. Murrell, 368 F.3d 1283, 1288–89 (11th Cir. 2004) (the defendant's intent, and not "whether the 'victim' is real, fictitious, or an undercover officer," is all that was relevant in the application of an analogous guideline); United States v. Root, 296 F.3d 1222, 1231–32 (11th Cir. 2002) (the purpose and intent of the defendant's interstate trip to have sex with a minor, not the sex act itself, are the factors relevant to the application of 18 U.S.C. § 2423(b), the statutory companion to U.S.S.G. § 2A3.1).

9

Lebovitz's "intent and conduct" are clear. Indeed, he wanted to, and did, make them so at the time of the crime, stating: "let me make it clear what I am looking for. . . . I would like to make love" to your eleven-year-old stepdaughter. And, he traveled from Chicago to Birmingham to do so. When arrested, Lebovitz was carrying a gift-wrapped pair of gold earrings and condoms. Traveling from Illinois to Alabama to have sex with an eleven-year-old is attempted criminal sexual abuse. The district court did not err in applying § 2A3.1 to determine Lebovitz's base offense level.

2.

Lebovitz next contends that the district court should not have increased his offense level under § 2A3.1(b)(2)(A), which provides for a four-step enhancement if the victim of the sexual abuse had not attained the age of twelve years. His position is that enhancement cannot be applied where the victim was fictitious.

The problem for Lebovitz is that this Court has, in a number of similar contexts, held that whether a victim is fictitious is irrelevant to the application of a federal statute or sentencing guideline prohibiting sexual conduct with a minor. So long as that statute or guideline proscribes attempts in the same manner that it proscribes completed acts, "this Court has affirmed attempt convictions when the defendant could not have achieved the final required act because it would have

been impossible to commit the actual crime." Root, 296 F.3d at 1229. And we have affirmed the application of guideline provisions in the same circumstances.

For example, in Root a man from North Carolina began an Internet conversation in the chat room "I Love Older Men" with someone he thought was a thirteen-year-old girl. Id. at 1224. He told her that he wanted to have sex with her, and arranged to meet her in a mall in Georgia near her hometown. Id. at 1225. When Root pulled up to the mall, however, he was met by his real conversation partner, an investigator with the county sheriff's department. Id. at 1226. Root, like Lebovitz, was charged with violating 18 U.S.C. § 2423(b). He, similar to Lebovitz, contended that the statute "requires the government to prove an actual 'person under 18 years of age' was the object of the interstate travel as an element of the offense." Root, 296 F.3d at 1231.

We rejected that contention. Noting that the statute says "[w]hoever attempts or conspires to violate subsection . . . (b) . . . shall be punishable in the same manner as a completed violation of that subsection," 18 U.S.C. § 2423(e), we reasoned that "Root's conviction turn[ed] simply on the illegal purpose for which Root traveled." Root, 296 F.3d at 1231. Section "2423(b) 'punishes mere "travel" in interstate commerce—even if no transportation of a minor was involved' if the

11

requisite intent is found." Id. (quoting United States v. Vang, 128 F.3d 1065, 1069 (7th Cir. 1997)). On that basis we affirmed his conviction.

We extended the Root rule to sentence enhancements based upon the youth of the victim in Murrell, another case similar to Lebovitz's. Murrell, trolling around an Internet chat room entitled "Rent F Vry Yng," asked a father if he could have oral sex and intercourse with his teenage daughter. Murrell, 368 F.3d at 1284–85. After agreeing to pay $300.00 for his "date," Murrell met "Dad" at a local hotel. Of course, Dad turned out to be an undercover officer with the county sheriff's office. Id. at 1285. (Unlike Lebovitz, when Murrell was arrested he was not carrying a pair of earrings and three condoms; instead, he was carrying a wrapped teddy bear and a box of condoms. Id.)

In Murrell the district court applied U.S.S.G. § 2G1.1 to determine Murrell's base offense level. The court then upped the offense level under § 2G1.1(b)(2)(B), which provides for a two-level enhancement "[i]f the offense involved a victim who had . . . attained the age of 12 years but not attained the age of 16 years." Murrell, like Lebovitz, argued to this Court that the enhancement based on the youth of the intended victim is improper where the victim was fictional. Murrell, 368 F.3d at 1288. Rejecting the argument, we instead held that "the enhancement applies whether the minor 'victim' is real, fictitious, or an

12

undercover officer." Id. at 1289.  Again, we concluded "that the enhancement is directed at the defendant's intent, rather than any actual harm caused to a genuine victim."  Id.

While Lebovitz's sentence was enhanced under a different provision than the ones involved in Root and Murrell, the rationale of those two decisions are nonetheless applicable here.  The commentary to § 2A3.1 (the guideline applied in Lebovitz's case) and text of 18 U.S.C. § 2423(b) (the statute applied in Root) both explicitly state that "attempts are treated the same as completed acts."  U.S.S.G. § 2A3.1 cmt. background[3]; Root, 296 F.3d at 1227, 1231.  The Root Court relied on that language in concluding that defendants who attempt to have sex with fictional victims should be treated no differently than those who prey on actual victims.  Application of the provision, we said, "turns simply on the illegal purpose" for the defendant's interstate travel.  Root, 296 F.3d at 1231.

Likewise, the relevant wording of the guideline enhancement provision at issue in Murrell is materially identical to that of the one applied in this case.  Compare U.S.S.G. § 2G1.1(b)(2)(B) ("If the offense involved a victim who

---

[3] When it comes to the interpretation of the guidelines, "Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines."  Murrell, 368 F.3d at 1288 n.4 (citing Stinson v. United States, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915 (1993)).

13

had . . . (B) attained the age of 12 years but not attained the age of 16 years, increase by 2 levels."), with U.S.S.G. 2A3.1(b)(2)(A) ("If the victim has not attained the age of twelve years, increase by 4 levels . . . ."). Like the Root Court, the Murrell Court reasoned that there need not be an actual victim for the enhancement to apply. Instead, it concluded, we are "directed" to look at the "defendant's intent, rather than any actual harm caused to a genuine victim." Murrell, 386 F.3d at 1289.

In this case, as we have already discussed, there can be no doubt as to Lebovitz's "intent" and "purpose." It was to have sex with an eleven-year-old girl he thought existed. That Lebovitz did not get to have sex with the girl because she did not exist is of no consequence to his sentence, because "attempts are to be treated as completed acts" for the purposes of U.S.S.G. § 2A3.1. U.S.S.G. § 2A3.1 cmt. background. "Thus, the enhancement applies whether the minor 'victim' is real, fictitious, or an undercover officer." Murrell, 368 F.3d at 1289. Lebovitz's four-level sentence enhancement under § 2A3.1(b)(2)(A) is therefore appropriate.

### B.

After Lebovitz's arrest in Birmingham, law enforcement officers searched his home in Chicago. They found, among other things, thousands of images of child pornography on his computer, books and photo albums showing the

14

sadomasochistic abuse of children, and videos of children performing sexual acts on adults.

As part of his plea agreement with the government, Lebovitz admitted for sentencing purposes to knowingly possessing 420 images of child pornography obtained through interstate commerce, in violation of 18 U.S.C. § 2252A. The district court applied U.S.S.G. § 2G2.4 as the base level offense, and enhanced Lebovitz's sentence because he possessed large quantities of child pornography, §§ 2G2.4(b)(2) & (b)(5)(C), because he used a computer to obtain his child pornography, § 2G2.4(b)(3), and because he possessed child pornography with sadomasochistic images, § 2G2.4(b)(4).

Lebovitz contends that the district court double counted in two ways his possession of child pornography and use of a computer in obtaining child pornography. "[D]ouble counting [is impermissible] only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Naves, 252 F.3d 1166, 1168 (11th Cir. 2001) (quotation marks omitted). Double counting "is permitted if the Sentencing Commission intended the result, and if the result is permissible because each

15

section concerns conceptually separate notions related to sentencing." Id. (internal quotation marks omitted).

We generally review a claim of double counting de novo. Id. "Absent a specific direction to the contrary, we presume that the Sentencing Commission intended to apply separate sections cumulatively," id., and as a result, a defendant asserting a double counting claim has a tough task.

1.

Lebovitz contends that the district court's decision to enhance his sentence for possession of ten or more pornographic items, § 2G2.4(b)(2), and use of a computer in obtaining child pornography, § 2G2.4(b)(3), constitute impermissible double counting. It does not.

This circuit, and at least three others, have affirmed sentences that resulted from enhancements under both §§ 2G2.4(b)(2) and (3). See, e.g., United States v. Hersh, 297 F.3d 1233, 1239 n.8 (11th Cir. 2002); United States v. Goldberg, 295 F.3d 1133, 1136 n.1 (10th Cir. 2002); United States v. Woodward, 277 F.3d 87, 90 n.1 (1st Cir. 2002); United States v. Demerritt, 196 F.3d 138, 140 (2d Cir. 1999). The Demerritt opinion is the only one that expressly addresses the double counting issue, and its reasoning is worth quoting at length:

Nothing in the Guidelines provision, or in the accompanying Commentary, indicates that the two enhancements are alternative rather than cumulative. Cf. U.S.S.G. § 2F1.1, application note 1 (1998) ("The adjustments in § 2F1.1(b)(4) are alternative rather than cumulative."). Moreover, the two provisions, which were enacted pursuant to congressional mandates five years apart, see U.S.S.G. app. C, amendments 436 & 537, are motivated by different purposes. Whereas subsection (b)(2) is intended to punish a defendant for the amount of child pornography he possesses, subsection (b)(3) is intended to address the particular harms caused by the use of computers in disseminating child pornography. As the House Report on the bill that led to the enactment of subsection (b)(3) explained,

> Distributing child pornography through computers is particularly harmful because it can reach an almost limitless audience. Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute. Additionally, the increasing use of computers to transmit child pornography substantially increases the likelihood that this material will be viewed by, and thus harm, children. Finally, the Committee notes with particular concern the fact that pedophiles may use a child's fascination with computer technology as a lure to drag children into sexual relationships. In light of these significant harms, it is essential that those who are caught and convicted for this conduct be punished severely.

H.R. Rep. No. 104-90, at 3–4 (1995), reprinted in 1995 U.S.C.C.A.N. 759, 760-61. Crucially, the enhancement in subsection (b)(3) applies irrespective of how many items of pornography a defendant possessed; indeed, [the defendant] could have received the enhancement in subsection (b)(3) even if there had been no files on his computer because he used his computer to order the videotape that led to his arrest in the first instance.

Demerritt, 196 F.3d at 142–43. We agree with the Second Circuit's analysis.

Section 2G2.4(b)(2) targets the possession of pornographic images. One of its purposes is to stamp out the well-documented link between the possession of child pornography and the sexual abuse of children. See Osborne v. Ohio, 495 U.S. 103, 111, 110 S. Ct. 1691, 1697 (1990) ("[E]ncouraging the destruction of these materials is also desirable because evidence suggests that pedophiles use child pornography to seduce other children into sexual activity."); United States v. Mento, 231 F.3d 912, 920 (4th Cir. 2000) ("The Supreme Court has approved as narrowly tailored the banning of child pornography, including its possession, in part because of the causal link between child pornography and the sexual abuse and exploitation of children."), rev'd on other grounds Mento v. United States, 535 U.S. 1014, 122 S. Ct. 1602 (2002); S. Rep. No. 104-358, at 12–13 (1996) ("Child pornography stimulates the sexual appetites and encourages the activities of child molesters and pedophiles, who use it to feed their sexual fantasies. Law enforcement investigations have verified that pedophiles almost always collect child pornography or child erotica.").

Section 2G2.4(b)(3), on the other hand, targets the use of a computer in obtaining child pornography. Its purpose is to punish the use of a powerful tool of child predators, a tool that both makes it more difficult for law enforcement to

18

apprehend those who prey on children and easier for those predators to find and attract vulnerable children.

Congress aimed the two enhancements at different kinds of harm. The § 2G2.4(b)(2) enhancement punishes Lebovitz for the thousands of pictures, computer files, videos, and books depicting child pornography that he had in his home. The § 2G2.4(b)(3) enhancement punishes him for using his computer to obtain some of that vast collection, and also for using it in the attempt to find a child to sexually abuse. Application of the two enhancements in the same case is not double counting.

## 2.

Lebovitz also contends that the district court engaged in impermissible double counting when it applied both the § 2G2.4(b)(2) enhancement for possessing ten or more images of child pornography, and the § 2G2.4(b)(5)(C) enhancement for possessing at least 300 but not more than 600 images of child pornography. His argument is that because the court in applying § 2G2.4(b)(2) counted all of the child pornography images above ten, it could not also count those from ten up to and beyond 300 in applying the § 2G2.4(b)(5)(C) enhancement. It is not a bad argument, but neither is it a persuasive one.

As we have already explained, § 2G2.4(b)(2) was added to the guidelines by Congress in 1991 with the express purpose of preventing the additional harm to children that is caused by those who possess large quantities of child pornography. See Demerritt, 196 F.3d at 142. Twelve years later, Congress stepped in again to do more in that regard. It did so through a provision in the PROTECT Act, Pub. Law. No. 108-21, 117 Stat. 650 (2003). See H.R. Rep. No. 108-66, at 58–59 (2003).

Instead of leaving the two-step enhancement of § 2G2.4(b)(2) as the only one for possession of larger quantities of child pornography, Congress in the PROTECT Act chose to provide greater enhancements where more than ten images were involved. It did so by creating § 2G2.4(b)(5), which specifies these four levels of additional enhancements:

> If the offense involved—
> (A) at least 10 images, but fewer than 150, increase by 2 levels;
> (B) at least 150 images, but fewer than 300, increase by 3 levels;
> (C) at least 300 images, but fewer than 600, increase by 4 levels; and
> (D) 600 or more images, increase by 5 levels.

There are two ways of interpreting these added enhancements in § 2G2.4(b)(5) as they relate to the pre-existing enhancement in § 2G2.4(b)(2). One way is to interpret the new provision as adding an overlay of enhancements to the one that already existed. The other way, which Lebovitz naturally prefers, is to interpret the

20

new provision to implicitly repeal the old one. Lebovitz's interpretation flies in the face of well-established principles of interpretation. There is a general presumption against implied repealers, United States v. Jordan, 915 F.2d 622, 627 (11th Cir. 1990), and there is also a more particular presumption that, absent evidence to the contrary, Congress "intended to apply separate guideline sections cumulatively." See Naves, 252 F.3d at 1168.

There is no evidence at all that Congress meant to repeal § 2G2.4(b)(2) when it enacted § 2G2.4(b)(5). The one thing we know for sure is that Congress meant to increase the penalties provided for possession of greater quantities of child pornography. H.R. Rep. No. 108-66, at 59 (2003) ("The Sentencing Guidelines are also amended with regard to possession of child pornography . . . . [P]enalties are increased based on the amount of child pornography involved in the offense."). That intent is furthered by interpreting the new provision as adding enhancements to the older provision. For that reason, and to give effect to the two presumptions we have described, we conclude that the simultaneous application of § 2G2.4(b)(2) and § 2G2.4(b)(5) is not impermissible double counting.

**AFFIRMED.**