# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 16, 2021          Decided July 29, 2022

No. 19-3060

UNITED STATES OF AMERICA,
APPELLEE

v.

RODNEY DAVIS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cr-00026-1)

*Robin M. Earnest*, appointed by the court, argued the cause
and filed the briefs for appellant.

*Michael E. McGovern*, Assistant U.S. Attorney, argued the
cause for appellee. With him on the brief were *Chrisellen R.
Kolb* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: MILLETT, RAO, and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

RAO, *Circuit Judge*: Rodney Davis pled guilty to traveling
across state lines with plans to sexually abuse an eight-year-old
child. Davis' arrest was the result of a successful sting

operation in which an officer posed as the father of a fictitious child and communicated with Davis. At sentencing, the district court applied an enhancement because "the victim had not attained the age of twelve years." U.S.S.G. § 2A3.1(b)(2)(A). On appeal, Davis argues that this enhancement cannot apply to fictitious victims and claims that defense counsel rendered constitutionally deficient performance by failing to contest the enhancement's application on that ground. We reject Davis' ineffective assistance claim as meritless since the enhancement can apply even when the victim is fictitious. We also reject Davis' remaining sentencing challenges as the right to appeal them was knowingly, intelligently, and voluntarily waived.

## I.

In early 2018, Davis connected online with a "father" offering his eight-year-old daughter for illicit sexual activities. Unbeknownst to Davis, the father was really an undercover officer running a sting operation for the Metropolitan Police Department–FBI Child Exploitation Task Force, and the eight-year-old was fictitious. Davis continued to chat online with the officer, coordinating how to sexually abuse the young girl. When the officer revealed the child's age, Davis was "totally cool" and had no qualms. Davis' primary concern was knowing how to initiate sex acts with the child and whether there were any "ground rules" of what could and could not be done to the eight-year-old during "play time." At various points during conversations with the officer, Davis graphically described fantasies of forcing the child to have oral sex, made plans to penetrate the child vaginally and anally, and suggested that the officer and Davis should "play[] with her simultaneously." Davis also expressed excitement and hope that this "good arrangement" would become a recurring engagement with the abusive acts steadily progressing at subsequent meetings.

After a few days of communications along these lines, the officer invited Davis to meet up in the District of Columbia to

begin the planned sex acts with the child. That same day, Davis accepted the invitation, left work, and drove across state lines to the designated meeting point. Davis was arrested shortly after arrival.

The federal government charged Davis with one count of "travel[ing] in interstate commerce … with a motivating purpose of engaging in … illicit sexual conduct with another person." 18 U.S.C. § 2423(b). Davis pled guilty to that charge and admitted to traveling across state lines "for the purpose of engaging in a sexual act with an eight-year-old girl." Davis also waived the right to appeal any sentence imposed as part of the plea agreement unless the claim was based on ineffective assistance of counsel. Satisfied that Davis was "fully competent and capable of" pleading guilty and that the decision was "knowing and voluntary," the court accepted Davis' guilty plea.

Both in the plea agreement and later sentencing memoranda, the parties agreed to a four-point sentencing enhancement. That enhancement applies when a defendant has committed or attempted to commit criminal sexual abuse against a "victim [who] had not attained the age of twelve years." U.S.S.G. § 2A3.1(b)(2)(A) ("minor victim enhancement"). Instead of arguing against the enhancement's applicability, Davis' counsel asked for a downward variance to recognize that the "victim was not real." The district court disagreed that a variance was warranted because, fictitious or not, Davis thought an eight-year-old was involved, planned to sexually abuse that girl, tried to effectuate those plans, and hoped to perpetuate that abuse in the future. Adopting the recommended Guidelines range and considering all the relevant factors, the district court sentenced Davis to 108 months of imprisonment and 120 months of supervised release. Davis appealed.

4

II.

Davis first claims that defense counsel rendered constitutionally deficient performance by failing to contest the minor victim enhancement's application at sentencing since the enhancement does not apply to situations involving fictitious victims. Because this argument lacks legal merit, defense counsel's failure to raise it is not constitutionally deficient performance.

To show ineffective assistance of counsel, "the defendant must show both error by counsel and prejudice to the defense." *United States v. Marshall*, 946 F.3d 591, 595 (D.C. Cir. 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Not only must there be error, but the "[e]rror must be so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* (cleaned up). A defendant cannot show that an error resulted in constitutionally deficient performance, however, if the allegation of error is meritless. *United States v. Islam*, 932 F.3d 957, 963–64 (D.C. Cir. 2019). As we have repeatedly held, "[c]ounsel's failure to raise a meritless … objection [is] not deficient performance." *United States v. Sitzmann*, 893 F.3d 811, 833 (D.C. Cir. 2018) (per curiam).

To determine whether Davis' claims have merit, we turn to whether the minor victim enhancement applies in situations where the victim was fictitious. *See* U.S.S.G. § 2A3.1(b)(2)(A). Our circuit has yet to pass on this question, but the three circuits to consider the issue agree that fictitious victims can trigger this sentencing enhancement. *See United States v. Angwin*, 560 F.3d 549 (6th Cir. 2009); *United States v. Graham*, 413 F.3d 1211 (10th Cir. 2005); *United States v. Lebovitz*, 401 F.3d 1263 (11th Cir. 2005). We join them and hold that a victim's fictitious nature will not foreclose application of the minor victim enhancement if a defendant intended to sexually abuse an individual the defendant thought

"had not attained the age of twelve years." *See* U.S.S.G. § 2A3.1(b)(2)(A). Four points support our conclusion.

First, the minor victim enhancement is part of a Guidelines section that applies to offenses for "Criminal Sexual Abuse" and "Attempt[s] to Commit Criminal Sexual Abuse." *See id.* § 2A3.1. Attempts to commit sexual abuse focus on a defendant's intent and conduct directed at accomplishing that abuse. An offense could therefore fit within this Guidelines section even if the defendant was "unable to complete the crime because the victims were fictitious." *United States v. Butler*, 92 F.3d 960, 963 (9th Cir. 1996). In *Lebovitz*, the Eleventh Circuit explained that a defendant's "intent and conduct" were all that mattered in determining whether a defendant had "attempted [to commit] criminal sexual abuse," not whether the defendant carried out or could have carried out his intentions against a fictitious victim. 401 F.3d at 1268. As the minor victim enhancement applies to completed and attempted sexual abuse, we decline to limit the enhancement's applicability merely because the defendant tried, but was unable, to abuse a fictitious victim under twelve. *See id.* at 1270 (that a defendant "did not get to have sex with the girl because she did not exist is of no consequence to his sentence" because the Guidelines section also applies to attempts) (cleaned up).

Second, including fictitious children within the minor victim enhancement comports with Davis' particular crime. Davis pled guilty to "travel[ing] in interstate commerce … with a *motivating purpose* of engaging in … illicit sexual conduct," which is defined to include a sexual act with a person under the age of eighteen. 18 U.S.C. § 2423(b), (f)(1) (emphasis added). The conviction "turned simply on the illegal purpose for which [Davis] traveled." *Lebovitz*, 401 F.3d at 1268 (cleaned up). Because that purpose is what matters under Section 2423(b), we recently explained that when a defendant travels across state lines to engage in sex

acts with a child that turns out to be fictitious, the impossibility of completing the crime is not a cognizable defense. *United States v. Lieu*, 963 F.3d 122, 126–27 (D.C. Cir. 2020). We held that a defendant is criminally liable so long as he "inten[ded] to engage in illicit sexual conduct" with an individual that the defendant "believes … to be" under eighteen regardless of "the circumstances as they may have existed in fact." *Id.* at 127 (cleaned up). Both the Section 2423(b) offense and the minor victim enhancement turn on a defendant's intent to commit abuse and therefore may encompass fictitious minors.

Third, the language and context of the minor victim enhancement focus on a victim's characteristics, not the harm done to the victim. The enhancement applies if "the victim had not attained the age of twelve years." U.S.S.G. § 2A3.1(b)(2)(A). By contrast, other enhancements in Section 2A3.1 apply, for example, "[i]f the victim sustained permanent or life-threatening bodily injury," or "[i]f the victim was abducted." *Id.* § 2A3.1(b)(4)(A), (b)(5). While these examples focus on harm to the victim, such as injury or abduction, the minor victim enhancement refers only to the victim's age. The enhancement's applicability therefore "does not … depend on the effect of the defendant's conduct upon the victim," but rather the victim's characteristics. *See Angwin*, 560 F.3d at 552 (cleaned up).

Finally, because the word "victim" is defined to include undercover officers, we can infer that the enhancement turns on a victim's characteristics as understood by the defendant, not necessarily as they exist in reality. The commentary to Section 2A3.1 explains that "'[v]ictim' includes an undercover law enforcement officer." U.S.S.G. § 2A3.1 cmt. 1 (cleaned up); *see also United States v. DeCarlo*, 434 F.3d 447, 459 (6th Cir. 2006) (explaining this definition "eliminates any doubt" that undercover officers can trigger the minor victim enhancement). When an officer poses as a would-be victim, it

is not the officer's actual age that matters for purposes of the enhancement. Instead, in such situations we "punish the defendant's intentions" based on the perceived "characteristics of the intended, albeit fictional, victim." *See Angwin*, 560 F.3d at 552. "The targets of sting operations are not relieved of criminal liability merely because their intended victim turned out to be an undercover agent and not a child." *Graham*, 413 F.3d at 1220 (cleaned up). There is also no material difference between an officer posing as a child or, as in Davis' case, pretending to prostitute a fictitious one. In both situations "the defendant's intent is the same," and the minor victim enhancement applies. *Angwin*, 560 F.3d at 552.

We are unpersuaded by Davis' counterarguments. Davis first maintains that "victim" is ordinarily understood to mean a person who has been "acted on and usually adversely affected," but that a fictitious victim cannot be acted upon or affected. While Davis' definition captures one ordinary meaning of "victim," the minor victim enhancement has a specialized context. *See United States v. Bronstein*, 849 F.3d 1101, 1108 (D.C. Cir. 2017) (an "elementary rule of statutory interpretation" is that "[w]ords receive their plain, obvious and common sense meaning, unless context furnishes some ground to control, qualify, or enlarge it") (cleaned up). The minor victim enhancement applies to attempts and also includes a "victim" that turned out to be an undercover officer. U.S.S.G. § 2A3.1(b)(2) & cmt. 1. In context, the minor victim enhancement can be triggered by fictitious victims.

Davis also argues our reading is incorrect because the enhancement does not use the word "minor," a term used in a different Guidelines provision and explicitly defined to include "fictitious" individuals. *See id.* § 2A3.1(b)(6) & cmt. 1. Had the Sentencing Commission wanted the minor victim enhancement to include fictitious individuals, Davis argues, it would have used the word "minor" as it did in other enhancements. Davis

assumes that because "minor" and "victim" are different words, they must carry mutually exclusive meanings. This assumption, however, is unwarranted because words sometimes express overlapping meaning, as indicated by context. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 540 (2013) (explaining no "canon of interpretation … forbids interpreting different words used in different parts of the same statute to mean roughly the same thing"). Here, both terms are broad enough to include fictitious individuals, and we know they overlap: every "victim" under twelve will also be a "minor" as defined by the Guidelines. *See* U.S.S.G. § 2A3.1(b)(2)(A) & cmt. 1. Because the two terms overlap, no inference can be drawn from the fact that the minor victim enhancement refers to "victim" rather than "minor."[1]

We join our sister circuits in holding that application of the minor victim enhancement turns on the defendant's intent and the characteristics of the victim as perceived by the defendant. The enhancement can apply "whether the minor 'victim' is real, fictitious, or an undercover officer." *Lebovitz*, 401 F.3d at 1270 (cleaned up).

Davis intended to sexually abuse an eight-year-old girl and therefore the minor victim enhancement applied. Defense counsel's failure to raise a meritless challenge did not constitute deficient performance. *See Sitzmann*, 893 F.3d at

---

[1] Davis also contends that by allowing fictitious individuals to be "victims," other enhancements in Section 2A3.1 would make no sense. It would be absurd, Davis maintains, to say that a defendant's sentence could be enhanced when a "[fictitious] victim was abducted" since "the Guidelines were not intended to punish abducting a fiction." As the issue is not before us, we decline to opine in the abstract on whether fictitious victims can trigger Section 2A3.1's other enhancements.

833. We therefore reject Davis' ineffective assistance of counsel claim.

## III.

Davis also claims that the district court committed substantive and procedural errors during sentencing by failing to announce the standard conditions of Davis' supervised release; inadequately factoring Davis' gender identity into the sentence; and rejecting evidence of sentencing disparities between Davis and similarly situated defendants. We cannot reach those arguments, however, as Davis waived the right to appeal them.

Without disputing that the sentencing challenges fall within the plain meaning of the appeal waiver, Davis contends that the waiver can be set aside because of defense counsel's constitutionally deficient advice to sign the plea agreement. That advice fell below constitutional standards, Davis maintains, because defense counsel should have told Davis not to concede the minor victim enhancement's applicability in the plea agreement. But as we explained above, any failure to oppose the enhancement's application was not constitutionally deficient performance.

Alternatively, Davis claims the district court's violation of Federal Rule of Criminal Procedure 11 invalidates the waiver. Before accepting a guilty plea, Rule 11 obligates the district court to "inform the defendant of, and determine that the defendant understands, … the terms of any plea-agreement provision waiving the right to appeal." FED. R. CRIM. P. 11(b)(1)(N). The district court failed to discuss the right to appeal the sentence during the plea hearing with Davis in violation of this rule. But a violation of Rule 11 is considered "harmless error if it does not affect substantial rights." FED. R. CRIM. P. 11(h). In *United States v. Lee*, for instance, we rejected the argument that a Rule 11 error "automatically [made] an

appeal waiver not knowing, intelligent, and voluntary." 888 F.3d 503, 506 (D.C. Cir. 2018) (emphasis removed). We explained it "makes little sense" to reject an appeal waiver "merely because it was not mentioned at the plea hearing" when the defendant's waiver was otherwise knowing, intelligent, and voluntary. *Id.* Because the Rule 11 objection was not raised before the district court, our review is for plain error. *Id.* at 508 n.3. To set aside the appeal waiver, Davis bears the burden of showing that the Rule 11 error affected substantial rights, which means demonstrating the waiver was not, in fact, knowing, intelligent, or voluntary. *Id.* at 508.

Davis failed to make this showing. The record demonstrates that the written plea waiver was clear, and Davis attested to understanding and agreeing with its terms. Under the heading "Appeal Rights," the plea agreement explained that Davis was waiving "the right to appeal the sentence in this case, including but not limited to any term of imprisonment, fine, forfeiture, award of restitution, term or condition of supervised release, authority of the Court to set conditions of release, and the manner in which the sentence was determined." Davis signed the agreement, averring to have "read every page" and "fully underst[ood] … and agree[d] … without reservation."

The colloquy during the plea hearing provides further support of Davis' awareness and understanding. The district court asked whether Davis had "read [the agreement] carefully," "underst[ood] it," and had "enough time to talk to [defense counsel] about it." To each question, Davis responded, "Yes." The court then asked defense counsel to "briefly summarize the terms of the plea agreement," during which counsel explained, among other things, that "[t]his is a case in which there is an appeal waiver." The court then asked, "is this what you have agreed to?" Davis again said, "Yes." Finally, the court asked whether Davis "ha[d] any confusions or questions about this agreement," to which Davis responded,

11

"No." Davis reaffirmed accepting the terms of the plea agreement and the appeal waiver.

In short, nothing in the record suggests Davis misunderstood or lacked awareness of the appeal waiver's terms. *See Lee*, 888 F.3d at 508 (enforcing an appeal waiver when "the written plea agreement was crystal clear"; the defendant "signed the agreement" and "orally reaffirmed to the Court that he had read" the agreement without additional questions; and "no record evidence suggest[ed] that [the defendant] was confused or somehow misunderstood the appeal-waiver provision"). Rather, the waiver was "knowing" because Davis was "aware of and underst[ood] the risks involved in [the] decision" to waive the right to appeal. *See United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009). The district court's Rule 11 error did not affect Davis' substantial rights, and therefore we enforce the waiver and dismiss the remaining issues.

\* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*