[954 NYS2d 541]

PEOPLE OF STATE OF NEW YORK, Respondent, v ANDREW DE-
DONA, Appellant.

Second Department, November 14, 2012

**APPEARANCES OF COUNSEL**

*Burke, Miele & Golden, LLP*, Goshen (*Michael K. Burke* of counsel), for appellant.

*Janet DiFiore, District Attorney*, White Plains (*Lois Cullen Valerio* and *Richard Longworth Hecht* of counsel), for respondent.

**OPINION OF THE COURT**

Eng, P.J.

The conduct which resulted in the defendant's designation as a level two sex offender started in early February 2005, when he began communicating over the Internet with an undercover police officer posing as a 14-year-old girl named "Jules." Using a webcam, the defendant transmitted images of himself mastur-

bating to "Jules," and arranged to meet both this fictitious girl and her supposed 12-year-old friend in New Jersey to engage in sexual activity. The defendant was arrested when he arrived at the designated meeting place, and he subsequently pleaded guilty to interstate travel with intent to engage in illicit sexual conduct with a person under 18 years of age in violation of 18 USC § 2423 (b). After the defendant completed his term of imprisonment, the New York State Board of Examiners of Sex Offenders (hereinafter the Board) evaluated him for registration as a sex offender by preparing a risk assessment instrument. The risk assessment instrument assigned the defendant a total of 60 points under risk factors 3 (number of victims), 5 (age of victims), and 7 (relationship with the victims). Although the defendant's score on the risk assessment instrument fell within the range of a level one sex offender, the Board recommended an upward departure to a level two designation in view of his admitted intent to engage in sexual activity with two young girls. At the conclusion of a hearing pursuant to the Sex Offender Registration Act (see Correction Law art 6-C [hereinafter SORA]), the County Court assessed the defendant 60 points under risk factors 3, 5, and 7, and granted the People's application for an upward departure to a level two designation as recommended by the Board. On appeal, the defendant contends that a law enforcement officer posing as an underage child on the Internet is not a "victim" as contemplated by SORA, and that since he did not have physical or sexual contact with an actual person, he should not have been scored any points on the risk assessment instrument. The defendant also maintains that the People failed to demonstrate, by clear and convincing evidence, the existence of aggravating factors warranting an upward departure from his presumptive risk level, and, thus, the County Court improvidently exercised its discretion in designating him a level two sex offender. For the reasons which follow, we find that the defendant was properly assessed points under the subject risk factors despite the fact that the victims in this case were fictitious, and that the County Court providently exercised its discretion in departing from his presumptive risk level.

The events which culminated in the defendant's arrest and conviction began on February 4, 2005, when an undercover police officer in Bergen County, New Jersey, signed into an Internet chat room and received an instant message from an individual stating "like to have sex today." This individual was later identified to be the defendant, Andrew DeDona, a then-38-year-

old married man with a baby daughter. Pretending to be a 14-year-old girl from New Jersey named "Jules," the officer began an online chat with the defendant. During this chat, the defendant asked "Jules" about her sexual history, and questioned her about her experiences with vaginal, anal, and oral sex. He told "Jules" that he lived "near" New Jersey, and expressed an interest in meeting her to engage in sexual activity, including anal sex. The defendant also asked "Jules" if she had any friends who would be willing to engage in sexual activity with him, and "Jules" replied that she had a 12-year-old friend who might be interested. The defendant described the sexual position he would prefer when having intercourse with "Jules," and told her that he would use baby oil when they engaged in anal sex. The defendant then arranged to meet "Jules" on February 9, 2005, in the parking lot of a fast-food restaurant in Fort Lee, New Jersey.

On the day before the scheduled meeting, February 8, 2005, the defendant engaged in another Internet chat with "Jules," in which he asked her to bring her 12-year-old friend to the meeting, so that he could engage in sexual activity with both girls. During his Internet chats with "Jules" on both February 4th and February 8th, the defendant used a webcam attached to the computer in his White Plains, New York, office to transmit images of himself exposed and masturbating to the fictitious 14-year-old girl. When the defendant arrived at the New Jersey parking lot to meet "Jules" and her friend on February 9th, he was placed under arrest.

For these acts, the defendant was charged, in a criminal complaint filed in the United States District Court for the District of New Jersey (hereinafter the District Court), with the federal offense of interstate travel with intent to engage in illicit sexual conduct with a person under 18 years of age in violation of 18 USC § 2423 (b). He subsequently pleaded guilty to the charged offense, and was sentenced to a term of 37 months of imprisonment, to be followed by 15 years of supervised release. The defendant completed his term of imprisonment, and was released to federal supervision on December 29, 2009. As a condition of his supervision, the defendant was prohibited from possessing, purchasing, or otherwise obtaining access to "any form of computer board, internet, or exchange format involving computers unless specifically approved by the U.S. Probation Office." He was also required to participate in a mental health program as directed by the U.S. Probation Office.

A few weeks after the defendant's release from prison, on February 4, 2010, the Board prepared a risk assessment instrument which assigned him a total of 60 points, presumptively indicating that he should be designated a level one offender. More specifically, the Board scored the defendant 20 points under risk factor 3 for having two victims, 20 points under risk factor 5 because his victims were between the ages of 11 and 16, and 20 points under risk factor 7 because he had established a relationship with the victims for the purpose of victimizing them. However, the Board recommended that the defendant be classified a level two sex offender, concluding that in light of his admitted intent to engage in sexual activity with two children, the community would be safer and more appropriately served by an upward departure.

At a SORA hearing conducted on April 6, 2010, the defendant's attorney advised the court that the defendant had no objection to the assessment of 60 points against him under risk factors 3, 5, and 7. However, when the People requested an upward departure as recommended by the Board, defense counsel opposed the request. Counsel argued that no departure from the defendant's presumptive risk level was warranted because he would be under federal supervision for 15 years, and the conditions of his supervision barred him from possessing computer equipment without approval, and required him to participate in counseling. Counsel further contended that the aggravating factors upon which the People and the Board relied in seeking an upward departure were actually part and parcel of the crime to which the defendant pleaded guilty. The County Court granted the People's request for an upward departure, stressing that the defendant's conduct included transmitting images of himself masturbating to someone he believed to be a 14-year-old girl, and concluding that the conduct resulting in the defendant's conviction had not been adequately taken into account by the risk assessment instrument.

## The Assessment of Points for Fictitious Victims

On appeal from the County Court's order designating him a level two sex offender, the defendant challenges the assessment of points against him on the risk assessment instrument under risk factors 3, 5, and 7. He contends that a law enforcement officer posing as an underage child on the Internet is not a "victim" as contemplated by SORA, and maintains that he should not have been scored any points on the risk assessment

instrument because he did not have physical or sexual contact with an actual person. Although the defendant acknowledges that he would be required to register as a sex offender even if he received a score of zero on the risk assessment instrument, he argues that receiving the lowest possible score is a factor that would strongly militate against an upward departure.

■ Initially, we note that the defendant raised no objection at the SORA hearing to the 60 points scored for risk factors 3, 5, and 7. Accordingly, his contention that no points should have been assessed against him for these risk factors because his victims were fictitious is unpreserved for appellate review (*see* *People v Campbell*, 98 AD3d 5 [2012]; *People v Velardo*, 80 AD3d 682 [2011]; *People v Serrano*, 61 AD3d 946, 947 [2009]; *People v Barber*, 29 AD3d 660 [2006]). In any event, this contention is without merit, since, for the reasons discussed below, the risk factors at issue here—3, 5, and 7—do not require actual, physical sexual contact between the offender and victim, and assessing the defendant points for these risk factors furthers the purpose for which SORA was enacted.

We begin our analysis by noting that SORA mandates the appointment of a five-member Board comprised of "experts in the field of the behavior and treatment of sex offenders" (Correction Law § 168-*l* [1]), and tasks the Board with the responsibility of developing guidelines and procedures to assess a sex offender's risk of a repeat offense, and the threat posed to public safety (*see* Correction Law § 168-*l* [5]). To fulfill its statutory mandate, "[a]fter much discussion, the Board opted to create an objective assessment instrument that would provide a risk level combining risk of reoffense and danger posed by a sex offender" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 3 [2006] [hereinafter the Guidelines]). The risk assessment instrument developed by the Board "contains a series of factors that permit the assignment of specified point values depending on the characteristics of the victim, the circumstances surrounding the crime, a defendant's prior history of sexual offenses, and the like" (*People v Mingo*, 12 NY3d 563, 568 n 2 [2009]). A sex offender's point totals on the risk assessment instrument presumptively place the offender in one of three categories—level one, low risk of reoffense (1 to 70 points); level two, moderate risk of reoffense (75 to 105 points); and level three, high risk of reoffense (110 to 300 points).

The three risk factors for which the defendant was scored 20 points each are all in the category of the risk assessment instru-

ment entitled "Current Offense(s)," and relate to the number of victims (risk factor 3), the age of the victim or victims (risk factor 5), and the defendant's relationship with the victim or victims (risk factor 7). The Guidelines explain that risk factor 3 assesses 20 points where there are two victims, and 30 points where there are three or more victims, because "[t]he existence of multiple victims is indicative of compulsive behavior and is, therefore, a significant factor in assessing the offender's risk of reoffense and dangerousness" (Guidelines at 10). Further, since offenders who target children as their victims are deemed to be more likely to reoffend (*see* Guidelines at 11), risk factor 5 assesses an offender 20 points where the victim or victims are between the ages of 11 through 16. Risk factor 7 assesses an offender 20 points where the crime was either directed at a stranger, or at a person with whom a relationship had been established for the primary purpose of victimization, since such a situation presents "a heightened concern for public safety and need for community notification" (Guidelines at 12).

In urging us to conclude that points cannot be assessed for risk factors 3, 5, and 7 where the offender's intended victim is a fictitious persona, the defendant relies upon our prior decision in *People v Costello* (35 AD3d 754 [2006]). In *Costello,* the victim was "a fictitious screen name used by an undercover detective posing as a 14-year-old male, who communicated with the defendant only through Internet chat rooms and via instant messaging" (*id.* at 755). On appeal, the defendant argued that he had been improperly assessed 20 points under risk factor 4 for engaging in a continuing course of sexual misconduct with the victim. According to the Guidelines, "an offender has engaged in a continuing course of sexual contact when he engages in either (i) two or more acts of sexual contact, at least one of which is an act of sexual intercourse, oral sexual conduct, anal sexual conduct, or aggravated sexual contact, which acts are separated in time by at least 24 hours, or (ii) three or more acts of sexual contact over a period of at least two weeks" (Guidelines at 10). Relying on the Guidelines, this Court agreed that the defendant had been improperly scored points under risk factor 4, concluding that "[b]ecause there was never any 'sexual contact' (Penal Law § 130.00 [3]) between the defendant and the 'victim,' it follows that the defendant could not have engaged in a 'continuing course of sexual misconduct' as contemplated by the guidelines" (*People v Costello,* 35 AD3d at 755)

*Costello* is readily distinguishable because the Guidelines make clear that risk factor 4 requires sexual contact between

the offender and the victim. In contrast, the risk factors at issue here—3, 5, and 7—are not risk factors which require actual, physical, sexual contact between the offender and victim. Further, assessing the defendant points for the number and ages of his "victims"—whom he clearly believed to be a 14-year-old girl and her 12-year-old friend, and for establishing a relationship with the supposed 14 year old for the purpose of victimizing her and her friend, is entirely consistent with the rationale underlying risk factors 3, 5, and 7, as set forth by the Board in the Guidelines. The fact that the 14-year-old girl with whom the defendant believed he was communicating was actually an undercover officer does not lessen his risk of reoffense, or make him any less of a risk to the community than he would be if he had succeeded in making contact with an actual child.

It is also significant to note that the defendant's conduct in traveling to New Jersey with the intent to engage in sexual activity with two young girls resulted in his conviction of the federal offense of interstate travel with intent to engage in illicit sexual conduct with a person under 18 years of age in violation of 18 USC § 2423 (b), despite the fact that the girls he believed he would be meeting were fictitious. Several United States Courts of Appeals have held that the existence of an actual minor is not necessary to support a conviction for interstate travel to engage in illicit sexual conduct with a person under 18 years of age in violation of 18 USC § 2423 (b), and/or for attempting to persuade a person under 18 years of age to engage in illegal sexual activity in violation of 18 USC § 2422 (b) (see United States v Gagliardi, 506 F3d 140, 144-147 [2d Cir 2007]; United States v Tykarsky, 446 F3d 458, 464-469 [3d Cir 2006], appeal after remand 295 Fed Appx 498 [2008], cert denied 556 US 1175 [2009]; United States v Sims, 428 F3d 945, 959-960 [10th Cir 2005]; United States v Meek, 366 F3d 705, 717-718 [9th Cir 2004]; United States v Root, 296 F3d 1222, 1227-1232 [11th Cir 2002], reh denied 48 Fed Appx 744 [2002], cert denied 537 US 1176 [2003]; United States v Farner, 251 F3d 510, 512-513 [5th Cir 2001]). Discussing 18 USC § 2423 (b) in its decision in Tykarsky, the Third Circuit pointed out that this statute, by its unambiguous terms, "criminalizes interstate travel for an illicit purpose. The actual age of the intended victim is not an element of the offense; criminal liability 'turns simply on the purpose for which [the defendant] traveled' " (United States v Tykarsky, 446 F3d at 469, quoting United States v Root, 296 F3d at 1231). The conclusion that no actual child

victim is necessary to support a conviction under federal provisions that criminalize attempts to victimize a child is supported by legislative history. In this regard, the House Judiciary Committee stated, in discussing a 1998 amendment to 18 USC § 2422 (b), that

> "law enforcement plays an important role in discovering child sex offenders on the Internet before they are able to victimize an actual child. Those who believe they are victimizing children, even if they come into contact with a law enforcement officer who poses as a child, should be punished just as if a real child were involved. It is for this reason that several provisions in this Act prohibit certain conduct involving minors and assumed minors" (HR Rep 557, 105th Cong, 2d Sess at 19, reprinted in 1998 US Code Cong & Admin News at 678, 688).

State courts in other jurisdictions have also rejected arguments that offenders caught in Internet sting operations by law enforcement officers posing as child victims are exempt from registration as sex offenders (see People v Buerge, 240 P3d 363 [Colo Ct App 2009], cert denied 2010 WL 2991478, 2010 Colo Lexis 560 [Sup Ct, Aug. 2, 2010, No. 09SC1077]; Colbert v Commonwealth, 47 Va App 390, 624 SE2d 108 [2006]; Spivey v State, 274 Ga App 834, 619 SE2d 346 [2005]; People v Meyers, 250 Mich App 637, 649 NW2d 123 [2002]).

At its core, SORA is a regulatory scheme expressly enacted for the nonpunitive purposes of "protecting communities by notifying them of the presence of individuals who may present a danger and enhancing law enforcement authorities' ability to fight sex crimes" (Doe v Pataki, 120 F3d 1263, 1276 [2d Cir 1997], cert denied 522 US 1122 [1998]; see L 1995, ch 192, § 1). It would be anomalous to conclude that the defendant can be subjected to criminal penalties for his conduct in traveling across state lines with the intent to engage in sexual activity with fictitious minors, but that the lack of an actual victim precludes the assessment of points under SORA based on the number of his intended victims, the ages of those victims, and his relationship to them. Indeed, when faced with the analogous issue of whether the presumptive override for an offender's prior felony sex conviction could apply where one of the felonies involved an undercover officer, rather than an actual underage victim, the First Department concluded in People v Agnew (68 AD3d 526 [2009]) that the "[d]efendant's conduct demonstrated

a high risk of sexual recidivism, not lessened by the fact that the crime was only an attempt, or the fact that the intended victim, believed by defendant to be a child, was actually an undercover officer" (*id.* at 526).

We recognize that some SORA hearing courts have held that points cannot be scored under risk factor 7 for an offender's relationship with the victim where the victim is a fictitious persona (*see People v Holland,* 32 Misc 3d 926 [2011]; *People v Jones,* 24 Misc 3d 1224[A], 2009 NY Slip Op 51603[U] [2009]). In reaching this conclusion in *Jones,* the County Court reasoned that

> "there is no support in the Guidelines for the proposition that the term 'victim' should encompass virtual identities, where, as here, the person with whom the defendant was communicating was an F.B.I. agent. Stated otherwise, the intent of the offender plays little or no part in making another actor a 'victim' " (24 Misc 3d 1224[A], 2009 NY Slip Op 51603[U], *3 [2009]).

We do not find this rationale persuasive. The Guidelines make clear that points are assessed under risk factor 7 because there is a heightened concern for public safety and a greater need for community notification where the offense is directed at a stranger or at a person with whom the offender has established a relationship for the primary purpose of victimization (*see People v Johnson,* 11 NY3d 416, 419 [2008]). These concerns are equally applicable where, as here, an offender establishes a relationship with an undercover officer the offender believes to be an actual child victim. Accordingly, we reject the defendant's argument that the three risk factors at issue here, including risk factor 7, require the existence of an actual victim.

Since there is no dispute that the defendant established a relationship with an individual he believed to be a 14-year-old girl through Internet communications, and that he arranged to meet this supposed 14 year old and her 12-year-old friend for the purpose of engaging in sexual activity, we find that the defendant was properly assessed points under risk factors 3, 5, and 7.

## The Upward Departure to Risk Level Two

Although the defendant's score of 60 on the risk assessment instrument falls within the range of a level one offender who poses a low risk of reoffense, we further conclude that, under the circumstances of this case, the County Court properly

departed from the defendant's presumptive risk level and designated him a level two sex offender. As the Guidelines explain, the risk level calculated by aggregating the points assigned on the risk assessment instrument is "presumptive" only, because "the Board or court may depart from it if special circumstances warrant" (Guidelines at 4; *see People v Johnson*, 11 NY3d at 421). The Guidelines acknowledge that an objective risk assessment instrument, "no matter how well designed, will not fully capture the nuances of every case" (Guidelines at 4). Thus, the court has the discretion to depart from the presumptive risk level where there are "special circumstances," i.e., "an aggravating or mitigating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the guidelines" (Guidelines at 4; *see People v Johnson*, 11 NY3d at 421; *People v Henry*, 91 AD3d 927 [2012]; *People v McDonnell*, 89 AD3d 815 [2011]; *People v Wyatt*, 89 AD3d 112, 120-121 [2011]).

An aggravating factor that may support an upward departure from an offender's presumptive risk level "is one which tends to establish a higher likelihood of reoffense or danger to the community . . . than the presumptive risk level" calculated on the risk assessment instrument (*People v Wyatt*, 89 AD3d at 121; *see People v Bogert*, 91 AD3d 925, 926 [2012]). A factor which is taken into account by the Guidelines, or is not related to the risk of reoffense and danger to the community, is not an "aggravating factor" that can support an upward departure (*People v Wyatt*, 89 AD3d at 121; *see People v Riley*, 85 AD3d 1141 [2011]; *People v Cohen*, 73 AD3d 1003, 1004 [2010]). Where, as here, the People seek an upward departure, they must identify an aggravating factor that tends to establish a higher likelihood of reoffense or danger to the community not adequately taken into account by the Guidelines, and prove the facts in support of the aggravating factor by clear and convincing evidence (*see People v Wyatt*, 89 AD3d at 121; *see also People v Campbell*, 98 AD3d 5 [2012]). Once this burden is satisfied, the SORA court may, in its discretion, choose to upwardly depart if the factor indicates that the point score on the risk assessment has resulted in an under-assessment of the offender's actual risk to the public (*see People v Wyatt*, 89 AD3d at 121, 123).

█ Guided by these principles, we find that the People sustained their burden of establishing, by clear and convincing evidence, the existence of two aggravating factors that heighten the defendant's risk of reoffense and danger to the community. First, the evidence presented at the SORA hearing demonstrates

that the defendant did not merely engage in sexually explicit communications with an individual he believed to be a 14-year-old girl. Rather, he arranged to meet the supposed 14-year-old girl and her 12-year-old friend in the parking lot of a fast-food restaurant in New Jersey for the purpose of engaging in sexual activity, and traveled from White Plains to the designated meeting spot to carry out his plan. Although the defendant could not, of course, be scored points on the risk assessment instrument for the degree and extent of his sexual contact with his supposed victims because they were fictitious, his online communications with "Jules" unquestionably demonstrated his intent to engage in sexual activity, including vaginal and anal intercourse, with two young girls. An analogous situation is discussed in the Guidelines in connection with risk factor 2, which scores points based on the extent of an offender's sexual contact with the victim. In discussing risk factor 2, the Guidelines note that if it is evident that the offender intended to rape his victim but was prevented from doing so by some factor other than his own change of mind, "the Board or a court may choose an upward departure if it concludes that the lack of points in this category results in an under-assessment of the offender's actual risk to public safety" (Guidelines at 9; *see People v Scott*, 85 AD3d 890, 891 [2011]). Here, too, assessing the defendant no points for sexual contact with his victims under-assesses his actual risk to the public. The defendant's communications demonstrate his intent to commit various crimes, including statutory rape, and he poses as much of a danger to the community as an offender who succeeds in engaging in sexual activity with an actual teenager or preteen he had targeted via the Internet.

A second aggravating factor which the People established by clear and convincing evidence at the SORA hearing is that the defendant transmitted images of himself masturbating to an individual he believed to be a 14-year-old girl. The risk assessment instrument does not take into account transmitting such images to an intended victim, and does not fully capture the level of risk posed by an offender, such as the defendant, who is caught attempting to victimize a child by an Internet sting operation. Although the defendant claims that his transmission of images of himself masturbating does not constitute an aggravating factor because these images were not sent to an actual "victim," the fact that the recipient, unbeknownst to him, was an undercover officer does not lessen his danger to the community.

Further support for our conclusion that aggravating circumstances exist in this case is provided by the Fourth Department's recent decision in *People v Agarwal* (96 AD3d 1450 [2012]), in which the Court found that an upward departure had been properly granted in circumstances quite similar to those at bar. In affirming the defendant's designation as a level two offender in that case, the Fourth Department held that

> "[t]here is clear and convincing evidence that defendant used the internet to engage in sexually explicit conversations with an undercover police officer posing as a 14-year-old girl, instructed her to masturbate, provided her with Web sites to educate her about sexual positions, communicated to her that he wanted to engage in sexual activity with her, and 'exhibited a willingness to act on his compulsions' by arranging to meet with her and then arriving at the arranged meeting with various items demonstrating his intent to engage in sexual activity" (*People v Agarwal*, 96 AD3d 1450, 1451 [2012] [internal quotation marks omitted], quoting *People v Blackman*, 78 AD3d 803, 804 [2010]).

We similarly conclude that the People sustained their burden of proving the existence of aggravating factors in this case, thus providing the County Court with a proper basis upon which to grant an upward departure.

The defendant's further contention that the County Court improvidently exercised its discretion in granting an upward departure because it overlooked certain mitigating factors is without merit. The defendant's claim is predicated in large part on the County Court's alleged failure to take into account the report of two psychosexual experts who examined him prior to sentencing on his federal conviction, and found his likelihood of reoffending to be low. However, the reports upon which the defendant now relies were not placed in evidence or referenced at the SORA hearing, and there is no indication that the County Court was in possession of them. Accordingly, the defendant's contentions regarding these reports are outside the record on appeal.

Additional factors which the defendant alleges that the County Court overlooked are that he had no prior criminal arrests or convictions, and is under strict supervision by the United States Probation Office with specialized safeguards imposed by the District Court. However, the risk assessment instrument scores an offender points based on the number and

nature of his or her prior crimes, and points if the offender will be released without supervision. The risk assessment instrument therefore took into account the fact that the defendant had no prior criminal history, and would be released under supervision, by assigning him zero points for these risk factors. Although the Guidelines and risk assessment instrument do not fully take into consideration the specialized conditions of the defendant's supervision which prohibit him from owning or obtaining access to a computer without the approval of the Probation Office, given the ease with which an offender can gain access to the Internet through modern technology, we do not find this to be a mitigating factor that outweighs the aggravating factors present in this case (*see People v Harding*, 87 AD3d 627, 628 [2011]; *People v Bretan*, 84 AD3d 906, 907-908 [2011]). Consequently, we will not disturb the County Court's exercise of its discretion in departing from the defendant's presumptive risk level, and designating him a level two sex offender.

Accordingly, the order is affirmed.

DILLON, DICKERSON and LEVENTHAL, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.