■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PAUL MACCHIA, Appellant. [5 NYS3d 392]—

Judgment, Supreme Court, Bronx County (Megan Tallmer, J.), entered on or about August 8, 2013, which adjudicated defendant a level two sexually violent offender pursuant to the Sex Offender Registration Act (Correction Law art 6-C), unanimously affirmed, without costs.

Defendant entered a plea of no contest in a Florida state court to three counts of lewd or lascivious exhibition (offender 18 years of age or older and victim less than 16 years of age), and one count of use of a computer service to seduce, solicit, lure, or entice a child for pornography while misrepresenting age. He was sentenced to concurrent terms of 364 days in county jail, to be followed by four years of sex offender probation. Defendant was required to register as a sex offender in Florida. Upon his relocation to Bronx County, the State of New York Board of Examiners of Sex Offenders (the Board) determined that defendant was required to register under the New York State Sex Offender Registration Act (SORA). The Board prepared a case summary, which stated that the crime occurred over a three-day period, beginning when defendant entered an Internet chat room and began electronically conversing with an undercover agent who was posing as a 13-year-old girl (the girl). Defendant asked the girl if she would like to view him over his webcam, and when she said yes, he showed her his face and upper body without clothing. Defendant then prodded the girl to agree to view him dancing without any clothes, al-

though he only exhibited his bare upper body. He also asked her if she would like him to masturbate, and if she was masturbating.

The next day, defendant entered the chat room again, where the girl was present, and he invited her to converse with him. This time he was completely naked in front of his webcam, and masturbated. A few hours later, he invited her to view his webcam again. He again masturbated in front of the webcam, and encouraged the girl to do the same. The day after that, defendant again chatted with the girl, and masturbated in front of his webcam. He also asked the girl if she would let him see her naked in person, and discussed sex acts he would like to perform on her, telling her that he would "satisfy" her.

The Board reviewed two psychiatric reports prepared in connection with the case, and neither concluded that defendant had a disorder. In the Risk Assessment Instrument (RAI), the Board assessed defendant 20 points under risk factor 5 (Age of Victim), based on the victim having been between the ages of 11 and 16 years, and an additional 20 points under risk factor 7 (Relationship with Victim), based on the defendant having established the relationship for the purpose of victimizing. Based on the total score of 40 points, the Board assessed defendant as risk level one, with a low risk of re-offending, and found that departure from that risk level was not warranted. The Board also recommended that defendant not be given a sex offender designation.

At his SORA hearing, the court noted that the People could argue for a departure based on the fact that risk factor 2 (Sexual Contact with Victim) could not apply because defendant and the girl were not physically in the same place at the time of their encounter. The court further noted that because defendant's conduct occurred over a period that was longer than 24 hours, he should have been assessed points under risk factor 4 (Duration of Offense Conduct with Victim). The People challenged the Board's determination not to assess points under risk factor 12 (Acceptance of Responsibility). This argument[1] was based on defendant's having entered a plea in Florida of no contest, and his having written a letter to the Board in which he emphasized that he "pleaded No Contest to these charges and that there was no victim in these incidences." The People characterized the quoted language as an attempt by defendant to minimize his culpability. Defendant's counsel dis-

---

1. The People never gave formal notice of their intention to seek a higher risk level; however, defendant agreed to waive his right to receive 10 days' notice of such an intention.

agreed with that characterization, but in any event offered to produce defendant to accept responsibility in open court.[2]

The court concluded that the Board's allocation to defendant of risk level one was inadequate and determined him to be a risk level two. The court stated, in relevant part: "I don't think this level would be appropriate for somebody who might re-engage in this conduct because the next person that he's in contact with could very well be a real child and that person would be victimized, and I don't think that this qualifies under the lowest level. This is not like one single, you know, inadvertent contact with somebody. This is a relationship that he attempted to develop, and as if over the period of days he got more and more explicit, counsel, indicated to her what he wanted to do, all the while thinking she's a 13 year-old girl. I don't believe that this risk score or the Board's recommendation accurately reflects even the risk of his re-offending, counsel, or the harm that would be caused if he did re-offend, which are the two factors that the court is supposed to weigh in assessing his risk." The court also determined that, because defendant had been convicted of a felony, he was required to be designated as a sexually violent offender under Correction Law § 168-a (7) (b).

Although the Board's assessment of a risk level is presumed to be correct, the reviewing court is to consider it as only a recommendation from which it, as an exercise of its discretion, can depart if there is clear and convincing evidence that a departure is warranted (*see People v Johnson*, 11 NY3d 416, 421 [2008]; Correction Law § 168-n [3]). The court's analysis is not limited to tallying up points it believes the Board did not assess; rather, the court can adjust the risk level upwards if it determines that there are "aggravating factors not adequately accounted for in the [RAI]" (*People v Vives*, 57 AD3d 312, 313 [1st Dept 2008], *lv denied* 12 NY3d 705 [2009]). This rule derives from the Board's "Risk Assessment Guidelines and Commentary," (the Guidelines), which note that "an objective instrument, no matter how well designed, will not fully capture the nuances of every case. Not to allow for departures would, therefore, deprive the Board or a court of the ability to exercise sound judgment and to apply its expertise to the offender" (*People v Wyatt*, 89 AD3d 112, 119 [2d Dept 2011], *lv denied* 18 NY3d 803 [2012], quoting the Guidelines at 4-5). Conversely, as noted, the Board's determinations are presumptive, and not to be routinely overturned (*id.*).

---

2. For reasons not clear from the record, defendant was never produced for this purpose.

*People v DeDona* (102 AD3d 58 [2d Dept 2012]), cited by the People, has facts similar to this case, and is instructive regarding the circumstances in which a court can find that a Board determination may not reflect the severity of a sex offense or sufficiently account for a defendant's propensity to re-offend. There, the defendant corresponded over the Internet with a law enforcement agent whom he believed was a minor, and masturbated in front of a webcam. Unlike this case, the defendant traveled to a location where he had arranged to meet the purported minor and her minor friend to have sex. The Board assessed the defendant 60 points on his RAI, which would have made him a presumptive level one risk, but elevated him to a level two based on his admitted intent to have sex with two minor children. The court affirmed this determination. First, it found that the RAI did not adequately account for the defendant's intent to achieve sexual contact, since it only contemplates actual contact (102 AD3d at 69). It further found that the RAI did not allow the Board to factor into its threat assessment the fact that the defendant masturbated over the webcam (*id.*).

Both of these aggravating factors existed in this case. Defendant argues that *DeDona* can be distinguished because he did not arrange to meet the girl for sex. However, this is too narrow an approach. In *DeDona*, as far as can be gleaned from the decision, the defendant immediately requested a meeting for sex. Here, defendant's behavior spanned several Internet chats, which escalated gradually from a graphically sexual conversation but exposure only of his upper body, then to masturbation in front of a webcam, then to his telling her the different sex acts he would like to perform on her and finally to his asking if she would let him see her naked "in person" and telling her that if he had the opportunity he would "satisfy" her. We can never know for certain if defendant would have ever sought a meeting with the girl because law enforcement intervened and arrested defendant before he could. However, based on the gradual escalation, and defendant's having asked the girl if he could see her naked and telling her that he would "satisfy" her, it was not an abuse of the court's discretion when it found that the People presented clear and convincing evidence that the Board's determination did not adequately assess the risk that defendant would offend again. The court also properly considered defendant's refusal to accept responsibility, which conclusion was amply supported by his letter to the Board.

Defendant focuses on the fact that even if he had been as-

sessed points on the RAI for contact and refusal to accept responsibility, his score would still have been within the parameters for level one. Again, however, this is too narrow an approach. The court's analysis was, as it should have been, whether the score attributed to defendant, no matter what it was, accurately reflected his risk of offending again, given all the circumstances (*People v Wyatt* at 116-117). The court appropriately found that it did not.

Finally, we find that the additional classification of defendant as a sexually violent offender was required by statute, because of defendant's conviction in another state of a felony requiring registration in that state (Correction Law § 168-a [3] [b]; [7] [b]; *see also People v Bullock*, 125 AD3d 1, 5-7 [1st Dept 2014], *lv denied* 24 NY3d *915* [2015]). Concur—Mazzarelli, J.P., Sweeny, Andrias, Moskowitz and Richter, JJ.