This memorandum is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 138
The People &c.,
          Respondent,
        v.
Vincent Izzo,
          Appellant.




          Adam J. Bevelacqua, for appellant.
          Damian Sonsire, for respondent.




MEMORANDUM:

        The order of the Appellate Division should be reversed,
without costs, and the matter remitted to County Court for
further proceedings in accordance with this memorandum.

        Defendant, who was 21 years old at the time of his
arrest, was charged with various sex crimes and other offenses
arising out of his contact with three underage girls.  He pleaded
guilty to two counts of criminal sexual act in the second degree,

- 1 -

two counts of unlawful imprisonment in the second degree, two counts of sexual abuse in the third degree, endangering the welfare of a child and aggravated harassment in the second degree. He was placed on interim probation for a period of one year, but soon violated that probation by purchasing a computer, operating a Facebook account under an assumed name, and sending sexually explicit messages to a 17-year old girl. He admitted to violating the terms of his interim probation and was sentenced to a two year determinate prison term and three years postrelease supervision.

Prior to defendant's release from prison, his case was returned to County Court for classification pursuant to the Sex Offenders Registration Act (see Correction Law art 6-C [SORA]), and upon agreement of the parties, the court determined the SORA classification on written submissions. The Board of Examiners had classified defendant through its risk assessment instrument (RAI) as a risk level II offender, assessing him 105 points, which indicates a moderate risk of re-offending. As is relevant here, the Board assessed 30 points under risk factor 3 (Number of Victims) for three or more victims and 20 points under risk factor 7 (Relationship between Offender and Victim) for his relationships with the underage girls. County Court found that the assessment of 30 points for three victims was supported by clear and convincing evidence, as was the assessment of 20 points under risk factor 7, finding that defendant had "contacted [the

girls] repeatedly to build a relationship which could ultimately satisfy his sexual desires." County Court did not expressly decide defendant's application for a downward departure.

The Appellate Division, with two justices dissenting, affirmed (120 AD3d 860 [2014]). It agreed with County Court's assessment of points under risk factors 3 and 7. Regarding defendant's downward departure request, the Appellate Division held that although County Court had not expressly referenced that request, it had discussed the factors relied upon by defendant, and thus provided an adequate basis for intelligent appellate review. It concluded that defendant had failed to establish, by a preponderance of the evidence, that a downward departure was warranted. The dissent disagreed with the assessment of points under both risk factors 3 and 7, and concluded that defendant's application for a downward departure should be remitted.

We affirm the assessment of 30 points under risk factor 3 (Number of Victims) on the basis of three or more victims. The commentary to the guidelines states:

> "This category focuses upon the number of
> people whom the offender victimized in the
> case (or cases) that ultimately resulted in
> the instant conviction. Clear and convincing
> evidence of sexual conduct by the actor against the
> victims may be taken into consideration. The existence
> of multiple victims is indicative of compulsive
> behavior and is, therefore, a significant factor in
> assessing the offender's risk of reoffense and
> dangerousness" (SORA guidelines at 10).

One of the complainants testified before the grand jury that she and defendant had engaged in webcam chats, and that

during one such chat, defendant was touching himself outside his clothing, below the waist on his penis, while telling her she "could help him with [her] hands to fix it" and that she would "be good at it."  She also testified that on another occasion while they were talking on the webcam, defendant told her he had purchased fuzzy handcuffs and a kinky outfit for her.  During the plea allocution, the court described defendant's conduct as testified to by the complainant. Defendant said he remembered the webchat, but not the other parts, and that maybe sexual matters were discussed, but that was all he remembered.  The Judge stated: "For purposes of this plea, . . . you are admitting [to] endangering the welfare of a child by discussing sexual issues, et cetera, with this child . . . "

Defendant argues that this girl should not be counted as a third victim because his actions towards her were not SORA level sex offenses.  The People concede that the facts surrounding defendant's contact with this girl did not constitute a SORA level offense but assert that she may still be considered a victim under the Guidelines, arguing that defendant's narrow reading of the term "sexual conduct" would not allow for courts to take into account clearly inappropriate sexual behavior which may be relevant in assessing a defendant's risk of reoffending. Given that the Guidelines do not mention a SORA level offense in risk factor 3, but instead address the more general term, "sexual conduct," we agree with the People that the conduct does not have

to amount to a SORA level offense in order to be considered. Furthermore, the child can still be a victim under risk factor 3 even though the defendant and the child were not in the same room, but were communicating through a webcam (see People v DeDona, 102 AD3d 58, 63 [2d Dept 2012][points assessed under risk factor 3 where defendant was communicating by webcam to an undercover officer posing as an underage girl, concluding that risk factor 3 does not require actual, physical, sexual contact between the offender and the victim]).

Regarding risk factor 7, the commentary provides that "[t]he guidelines assess 20 points if the offender's crime (i) was directed at a stranger or a person with whom a relationship had been established or promoted for the primary purpose of victimization. . ." and that

> "[t]he phrase 'established or promoted for the primary purpose of victimization' is adopted from the act itself. An uncle who offends against his niece generally would not fall into this category. A scout leader who chooses his profession or vocation to gain access to victims and 'grooms' his victims before sexually abusing them would qualify" (SORA Guidelines at 12).

County Court found that defendant and the victims were not strangers, but assessed 20 points for grooming, finding that it was "apparent that defendant approached these girls because they were younger, immature and needy" and that defendant's "intentions for these girls [was] apparent from his first contact with them."

The Appellate Division majority was persuaded that there was clear and convincing evidence that defendant engaged in "grooming" behavior.  However, the dissent concluded, and we agree, that given the expert evidence (unrebutted by the People) "defendant is significantly lacking in sexual and social maturity, has difficulty in understanding and interpreting social cues, functions socially at the level of a young teenager of roughly the same age as his victims, and would be unable to maintain appropriate relationships with young women of his chronological age" (120 AD3d at 864 [Garry, J.,dissenting]), there was no clear and convincing evidence that he purposefully "groomed" the victims for the primary purpose of victimizing them, or, aside from grooming, had any relationship with the girls that would count for factor 7.  Accordingly, we agree with defendant that he should not have been assessed points under factor 7.  Because the courts below used an incorrect RAI score, we remit to County Court for determination of the downward departure application in accordance with People v Gillotti (23 NY3d 841 [2014]).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order reversed, without costs, and matter remitted to County Court, Chemung County, for further proceedings in accordance with the memorandum herein.  Chief Judge Lippman and Judges Pigott, Rivera, Abdus-Salaam, Stein and Fahey concur.

Decided October 20, 2015